KOPPERS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110247. Promulgated January 19, 1944.

*O. H. Chmillon, Esq., John E. McClure, Esq.,* and *E. L. Updike, Esq.,* for the petitioner.

*William A. Schmitt, Esq.,* for the respondent.

### OPINION.

LEECH, *Judge*: The petitioner is a Delaware corporation, and has its principal office in Pittsburgh, Pennsylvania. Its return for the year 1938 was filed with the collector of internal revenue in that city. The respondent has determined against it a deficiency in income tax for the year 1938 in the amount of $15,112.55. The petitioner claims an overpayment of $19,500.

All of the facts have been stipulated and are found as stipulated.

### ISSUE I.

During the taxable year the petitioner agreed to pay and paid $233,-833.42 representing deficiencies in income tax with interest thereon due and owing by nine Delaware and two Canadian corporations. The taxes of the Delaware corporations were for 1931 and 1934, and of the Canadian corporations for 1931 and 1932. Petitioner, as the sole stockholder or as transferee of a transferee, had received in liquidation all of the assets of the two Canadian corporations in 1933, and of eight of the Delaware corporations in 1936. As to the ninth Delaware corporation, Koppers Kokomo Co., petitioner, its sole stockholder, had sold the stock of that corporation on May 5, 1935, agreeing as a part of the terms of the sale to pay all Federal income and excess profits taxes which might be owing by that company on income received by it prior to December 31, 1934. It is the claim of petitioner that, since it was liable for the deficiencies in the tax of the above corporations, so much of the total payments of $233,833.42 as represented interest, namely, $61,658.83, was interest on its own indebtedness and as such was deductible by it under section 23 (b) of the Revenue Act of 1938, or, in the alternative, that a deduction was allowable for that part of the interest which accrued on the above described deficiencies subsequent to the dates on which petitioner received the corporate assets or otherwise became liable as transferee of such corporations.

Except as to Koppers Kokomo Co., separately dealt with hereinafter, the question thus posed is what amount of such interest, if any, paid by the petitioner as a transferee was interest on its obligations as distinguished from those of its transferors under section 311 of the Revenue Act of 1938. That section provides, *inter alia*:

(a) METHOD OF COLLECTION.—The amount of the following liabilities shall * * * be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title * * *:

(1) TRANSFEREES.—The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title * * *.

That provision may well be ambiguous. Certainly the court cases and those of the Board of Tax Appeals construing the nature and extent of transferee and similar liabilities are not reconcilable. That inconsistency does not result from any difference of opinion as to the extent of the liability of a transferor. It arises in the character and measure of the liability of the transferor collectible as such from the transferee.

Thus there was no break in the liability here of each of the transferor corporations to pay their respective deficiencies together with interest thereon from the "date prescribed for the payment of the tax * * * to the date the deficiency is assessed." Sec. 292, Revenue Acts of 1928 and 1934. But we approach the question from the standpoint of the transferee. It paid and seeks to deduct interest on the deficiencies determined against the transferor corporations. Was there any break in the liability of the transferors which section 311, *supra*, imposed as such upon petitioner, transferee? The record does not show that the deficiencies plus the interest thereon, when paid by the petitioner, exceeded the value of the transferred assets when received by the petitioner. The argument that there was no break thus rests upon an attenuated and unjustified application, we think, of the so-called trust fund doctrine.[1] The several transferor corporations distributed their assets here to petitioner. That event, we think, measured the liability of each transferor imposed as such upon the transferee, petitioner, by section 311, *supra*. At that time each transferor owed respondent the amount of its tax deficiency, together with interest thereon from the date of its determination. The petitioner took the assets encumbered with those debts. The debts as well as the assets then became those of petitioner. And the interest which thereafter accrued on those debts was therefore interest on the obligations of petitioner. That was the

---

[1] See *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401 (acquiesced in by respondent, VII–2 C. B. 14) ; *Koch v. United States*, — Fed (2d) — (C. C. A., 10th Cir., Nov. 8, 1943), may be *contra*, but with all due respect, the court there, apparently, did not consider the legislative history of section 311, *supra*. See *infra*.

intended and accomplished effect of section 311, *supra.* Any doubt of that fact is removed by the legislative history of the section.[2]

Two pertinent conclusions, of course, follow. The entire amount of the liabilities of the present transferors for their tax deficiencies and interest thereon to the time of the distribution of their assets to petitioner in liquidation were paid by petitioner as a part of its cost basis of the assets received and not as its interest as such. Therefore none of this amount is deductible by petitioner under section 23 (b), *supra. Lifson* v. *Commissioner,* 98 Fed. (2d) 508: certiorari denied, 305 U. S. 662; *Automatic Sprinkler Co. of America,* 27 B. T. A. 160. On the other hand, the interest on the deficiencies for the period after the petitioner received the assets of the transferor corporations was paid *qua* interest by the petitioner and is therefore deductible by it under section 23 (b), *supra.* See *Robinette* v. *Commissioner,* 139 Fed. (2d) 285; *Scripps* v. *Commissioner,* 96 Fed. (2d) 492; certiorari denied, 305 U. S. 625; *Penrose* v. *United States,* 18 Fed. Supp. 413; *Commissioner* v. *Beebe,* 67 Fed. (2d) 662; *United States* v. *Snook,* 24 Fed. (2d) 844; *Martin Thomas O'Brien,* 47 B. T. A. 561; *New McDermott, Inc.,* 44 B. T. A. 1035; *Estate of John Edgerly Morrell,* 43 B. T. A. 651; *Harvey M. Toy,* 34 B. T. A. 877; *R. T. Buzard,* 29 B. T. A. 981; *C. P. Ford & Co.,* 28 B. T. A. 156; *Continental Baking Co.,* 27 B. T. A. 884; *Frederick L. Watson,* 25 B. T. A. 971; *Wayne Body Corporation,* 24 B. T. A. 524; *Edward H. Garcin,* 22 B. T. A. 1027. In so far as *Helen B. Sulzberger,* 33 B. T. A. 1093, and *Inez*

---

[2] Section 280 of the Revenue Act of 1926 is the original predecessor of and identical, for present purposes, with section 311, *supra.* It did not appear in the bill as it originally passed the House of Representatives. The section was first inserted as an amendment by the Finance Committee of the Senate, and was a part of the bill which the Senate originally passed. The report of that committee, No. 52 of the 69th Congress, 1st session, contains the following, *inter alia,* about that amendment :

"The liability which arises in the transferee in respect of the receipt of the assets is normally to be measured by the liability of the transferor at the time of the transfer. This would include the amount of the tax due plus all interest, additional amounts, and additions to the tax provided by law, up to the time of such transfer. The section, however, provides that the liability of the transferee in this amount shall not in turn be subject to interest, additional amounts, or additions to tax, save that in case the transferee petitions the Board for a redetermination of his liability, the amount so determined shall draw interest at the rate of 1 per cent a month commencing with notice and demand for payment following the final decision of the Board."

In the conference on the bill, the House receded on this Senate amendment with an amendment of its own which in the words of the Conference Committee report, No. 356, 69th Congress, 1st session, under "Amendment No. 87" "modifies the Senate amendment in the matter of interest and the statute of limitations for assessment of transferees." Except for clarification and simplification, there was no further change in the original Senate amendment by the substitute, the purpose of both of which was to provide a new means of collection of a tax deficiency of the taxpayer from a transferee of its assets. This Conference Committee report then explains in some detail the purpose of the section and the procedure provided therein for carrying it out. The report then includes this expression :

"Under the amendment the liability of the taxpayer for the tax, including all interest and penalties, is fixed as of the time of the transfer of the assets. No further interest subsequently accrues upon such liability as assumed by the transferee, except the interest under section 276 (b) and (c) for failure to pay upon notice and demand after the outlined procedure has been completed and interest at 6 per cent a year for reimbursing the Government at the usual rate for loss of the use of the money due it."

*H. Brown*, 1 T. C. 225, are inconsistent with this opinion, those cases will no longer be followed.

In so far as Koppers Kokomo Co. is concerned, it is at once apparent on the facts that we do not have a question of transferee liability under the provisions of section 311 quoted above. That provision deals with "a transferee of property of a taxpayer." Koppers Kokomo Co. was admittedly "a taxpayer," but on the facts here petitioner was not a transferee of any of its property. Petitioner was the sole stockholder and sold all of its stock in Koppers Kokomo Co. to some unidentified party and, so far as we know, Koppers Kokomo Co. is and at all times since the transaction has been a solvent and going corporation, perfectly able to pay its own tax and all interest thereon. The promise of the petitioner, as a part of the terms of the sale of the stock of that corporation to a third party, to pay the income tax and interest thereon of Koppers Kokomo Co. was, in so far as the petitioner was concerned, merely a factor in fixing the price it was to receive on the sale of the stock. No part of the amount paid was as to petitioner the payment of interest within the meaning of section 23 (b). *Automatic Sprinkler Co. of America, supra.*

## Issue II.

Pursuant to its agreement in selling the Koppers Kokomo Co. stock to pay all Federal income and excess profits taxes which might be owing by that company on income received by it prior to December 31, 1934, the petitioner on April 8, 1939, paid $129.57 representing income tax and interest thereon of Koppers Kokomo Co. for the year 1934 and on July 15, 1938, paid, as transferee, $163,400.02 and $24,458.51 representing, respectively, the income tax and interest thereon of Bexley Co. for 1931 and of Falmouth Co. for 1932, the said corporations being the two Canadian corporations referred to in issue I above. In the case of none of the three companies was the existence of the income tax liability so paid by petitioner known or ascertained at the time of the sale of the Koppers Kokomo stock, or at the time of liquidation of either of the Canadian corporations.

It is stipulated and agreed by and between the parties that the transactions whereby the petitioner disposed of its holdings of stock in Koppers Kokomo Co., in 1935, and received in liquidation, in 1933, the assets of Bexley Co. and of Falmouth Co. were transactions in respect to which gain or loss was recognizable to petitioner under sections 112 (a) of the Revenue Acts of 1932 and 1934. See also sections 111 and 115 (c) of those acts. It is also stipulated and agreed that, in the final settlement of petitioner's income tax liability for the year 1933, the respondent allowed as a loss to petitioner the amounts of $4,781,211.19 and $1,709,665.65 as having been sustained in the liquidation of the Bexley and Falmouth Companies, respectively. It is the claim of the petitioner that the income taxes with interest

thereon paid by it for the above corporations, as herein set forth, represented a loss to it sustained in 1938, or an ordinary and necessary expense incurred in that year, and, in either case, deductible in determining its net income.

There is no basis whatever in the facts above stated for classification of the taxes and interest of the three corporations paid by petitioner as ordinary and necessary expenses of petitioner. They were parts of, and for the purposes here draw their character from, the gain or loss transactions above. The effect of the payment of the income tax and interest of the Koppers Kokomo Co. was to reduce the price received by petitioner on the sale of the Koppers Kokomo stock. Similarly, the income taxes with interest paid by petitioner for Bexley and Falmouth Companies were factors in fixing the amounts of the losses finally sustained by petitioner from the liquidation of those corporations. See *Park & Tilford*, 43 B. T. A. 348, 381; *T. H. Symington & Son, Inc.*, 35 B. T. A. 711, 757; *John T. Furlong*, 45 B. T. A. 362; *J. C. Wynne*, 47 B. T. A. 731. It is the claim of the petitioner that these items were on the facts here items of loss sustained in the year 1938, while respondent contends that they may be taken into account only in the year of the sale of the Koppers Kokomo stock and the year of liquidation of Bexley and Falmouth. *John T. Furlong, supra,* is directly in point and sustains the claim of the petitioner. See and compare *J. C. Wynne, supra; W. R. Hervey*, 25 B. T. A. 1282; *Virginia Iron Coal & Coke Co.* v. *Commissioner*, 99 Fed. (2d) 919, affirming 37 B. T. A. 195; and *Commissioner* v. *Alamitos Land Co.*, 112 Fed. (2d) 648.

## Issue III.

In December 1937 certain companies in which petitioner was a stockholder declared dividends, payable subsequent to the close of that year. These dividends were paid to and received by petitioner after January 1, 1938, and were reported by it as income for that year. In December 1938 certain companies in which petitioner was stockholder declared dividends, payable subsequent to the close of the year 1938. These dividends were paid to and received by petitioner after January 1, 1939, and were reported by petitioner as income in its return for 1939. Respondent, in determining the deficiency for the calendar year 1938, contested here, adjusted petitioner's income by including in its income for that year the dividends received in 1939, as heretofore described, but made no adjustment with respect to the dividends declared in 1937, although received and reported by petitioner in 1938.

Petitioner contends that its reporting of the dividends as income in the year in which they were actually received by it was correct, even though it is admittedly on an accrual basis of accounting. But it is argued that in the event it should be held that such dividends were

income to it in the year in which declared, the dividends it received and reported in 1938 should be eliminated from its taxable income for that year as income realized in 1937.

As to this issue, the parties have stipulated that our decision shall be in accordance with the final decision entered in the case of *Tar Products Corporation*, 45 B. T. A. 1033, appealed to the Circuit Court of Appeals for the Third Circuit. The Circuit Court has rendered its opinion in that case, *Tar Products Corporation* v. *Commissioner*, 130 Fed. (2d) 866, and the decision has now become final. In accordance therewith, it is held that the dividends in question were income to the petitioner in the year of their payment by the corporation and their receipt by petitioner. It follows that respondent is in error on this issue, and no adjustment should have been made with respect to dividends reported by petitioner for 1938.

## Issue IV.

In December 1937 proceedings were initiated for the acquisition by condemnation by the city of New York of certain properties of petitioner, known as "North Beach First Airport." On February 25, 1938, the corporation counsel for the city of New York duly advertised that application would be made to the Supreme Court of the State of New York on March 11, 1938, for an order condemning the property. On the latter date such order was entered by the Supreme Court of the State of New York, and the title and possession of the property vested in the city of New York on March 12, 1938. On March 26, 1938, petitioner served its claim for damages for such taking of its property, and, on August 22, 1938, the Supreme Court of the State of New York, County of Queens, rendered a decision on petitioner's claim for damages, awarding $784,850 together with interest thereon from March 11, 1938.

On November 16, 1938, petitioner filed objections to the award as made by the court. The city of New York entered no objection to the award and the Supreme Court on November 16, 1938, overruled the objections of petitioner. On December 22, 1938, the Supreme Court entered its final decree, awarding petitioner damages of $784,850 together with interest thereon from March 11, 1938.

Prior to the close of 1938, decision by those authorized to decide such question for the city of New York had been made, that no appeal would be taken by that city from the award as made by the Supreme Court. Prior to the close of 1938, petitioner computed its gain upon the basis of the award of $784,850 and entered that gain upon its books as a gain realized in that year, and included such gain in its income reported for that year. Included in the gain so reported was interest from March 11, 1938, to December 31, 1938, which was reported as ordinary income. The balance of the gain was returned as capital

gain. Payment of the award, together with interest from March 11, 1938, to the date of payment, was made by the city of New York on March 10, 1939.

There is no dispute as to the amount of the award and interest, nor as to the amount of gain realized by petitioner. In the determination of the contested deficiency, respondent has made no adjustment by way of eliminating from petitioner's income the amount of gain upon the award or the interest accrued during 1938. Petitioner, however, in this proceeding assigns as error respondent's failure to eliminate from its income these two items. Its reason for so doing is to protect its interest, in view of the fact that respondent has, in computing a deficiency in petitioner's income taxes for the year 1939, included these items as income for that year. A proceeding for redetermination of such deficiency is now pending in this Court at Docket No. 112587.

The stipulated facts show, we think, that the sale or exchange of the property in question occurred on March 11, 1938. Title and possession then vested in the city of New York, and prior to the close of 1938 the amount of the consideration became fixed and determinable, and the profit therefore ascertainable. *Kieselbach* v. *Commissioner*, 127 Fed. (2d) 359; affd., *Kieselbach* v. *Commissioner*, 317 U. S. 399. We think the disputed accrual was proper and that the gain realized in the award and the interest computed as of the close of the year 1938 was income to petitioner for that year.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TURNER, *J.*, dissenting: Not only does the reasoning of the majority fail to convince me of the soundness of the conclusion that petitioner is entitled, in computing its net income, to deduct so much of the interest paid on the income tax deficiencies of its transferor corporations as accrued after the dates on which the property of the said corporations was transferred to the petitioner. but examination of the facts and the law leads me to the opposite conclusion. The petitioner, as stockholder, received in liquidation the assets of ten corporations. It received those assets as a trust fund, with a duty to account to the creditors of the corporations from which the assets were received. *Phillips-Jones Corporation* v. *Parmley*, 302 U. S. 233; *Phillips* v. *Commissioner*, 283 U. S. 589; *Koch* v. *United States*, 138 Fed. (2d) 850 (C. C. A., 10th Cir., Nov. 8, 1943); *United States* v. *Snook*, 24 Fed. (2d) 844; and *McWilliams* v. *Excelsior Coal Co.*, 298 Fed. 884.[1]

---

[1] In *McWilliams* v. *Excelsior Coal Co.*, the court stated the theory to be "that such assets are a trust fund against which the corporate creditors have a prior claim before the stockholders," and in *United States* v. *Snooks*, it was said that "In the language of equity the stockholder so receiving corporate assets takes them as a trustee, with a duty to account to the creditor."

One creditor of the dissolved corporations was the United States, and, taking advantage of the method of collection provided by section 311 of the Revenue Act of 1938, the United States proceeded to collect from the petitioner the liabilities of the dissolved corporations.' The liability of each such corporation to the United States included not only the deficiency in tax, but interest at the rate of 6 percent per annum from the date prescribed for payment of the tax until assessment of the deficiency,[2] and the facts show that the amount collected from the petitioner as transferee was in each instance made up of the deficiency in tax plus interest so computed. Furthermore, the liability of the petitioner to respond as trustee in respect of the liabilities of its transferors was limited only by the amount of the assets received, *Phillips-Jones Corporation* v. *Parmley*, *supra*, and *Phillips* v. *Commissioner*, *supra*, and there is no contention or suggestion of a contention that the assets of each of the transferor corporations received by the petitioner in distribution were insufficient to pay the deficiency of each such transferor plus the full amount of the interest thereon. To state the proposition differently, petitioner, as stockholder of the dissolved corporations, had been preindemnified against or for the liability to which it responded, for in no instance is it shown or claimed that it was, by reason of any of the payments here in question, actually out of pocket any amount over and above the amount of the funds received in liquidation of each of the said corporations.

It is conceded by the majority that, as to a taxpayer seeking the deduction of interest, only the amount which was his or "its interest as such" is deductible and that an amount representing the interest of another is not deductible. even though paid by the taxpayer. *Lifson* v. *Commissioner*, 98 Fed (2d) 508; certiorari denied, 305 U. S. 662; and *Automatic Sprinkler Co. of America*, 27 B. T. A. 160. It is also conceded that the liability of each of the transferor corporations included interest in the full amount collected. whether accrued before or after the distribution of assets. But, says the majority opinion, the liability of the transferee is imposed by section 311, *supra*, and in addition to the tax there is imposed on the transferee by that section only so much of the interest of the transferor as had accrued at the date it distributed its assets, *ergo* any amount paid by a transferee representing interest accrued on the tax of its transferor after that date must of necessity be the interest of the transferee "as such" and therefore deductible by the transferee under section 23 (b) The obvious fallacy in the proposition stated is in the assumption that the liability of a transferee of property is imposed by section 311. If any proposition is clear from the language of the statute itself and from

---

[2] Sec. 202, Revenue Acts of 1928 and 1934.

the cases applying it, it is that the transferee sections of the various revenue acts impose no liability of any kind on anyone, but merely provide a new or more summary method for the collection of existing liabilities.[3] The liability collectible from a transferee under section 311 is plainly stated as the liability "at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title." In so far, then, as the origin, nature, and character of the liabilities are concerned, the transferee section of the statute leaves transferees exactly where it finds them. Long prior to the enactment of the transferee provisions of the various acts, it was well settled under the trust fund doctrine that a stockholder receiving the assets of a corporation in distribution was liable for the debts of the corporation, the only limitation being the amount of the assets received. *Phillips-Jones Corporation* v. *Parmley*, *supra*, and *Phillips* v. *Commissioner*, *supra*. The facts here show that the amount collected in respect of each taxpayer transferor was exactly the amount of its tax and interest as imposed by the revenue acts, and, as noted in the preceding paragraph, there is no showing or claim that any amount as interest or otherwise in excess of the amounts of the respective trust funds was charged against or paid by petitioner. Such being the case, the conclusion that petitioner paid no amounts *qua* tax or *qua* interest is in my opinion inescapable.

That is not to say, however, that under no circumstances is a transferee chargeable with interest *qua* interest on the amount received as distributee of a debtor corporation. *United States* v. *Snook*, *supra; R. T. Buzard*, 29 B. T. A. 981; *Frederick L. Watson*, 25 B. T. A. 971; *Edward H. Garcin*, 22 B. T. A. 1027; and *Henry Cappelini*, 16 B. T. A. 802. It is well settled as a matter of general law that where a party receives a fund impressed with a trust and fails to apply it to the uses with which it is impressed, or appropriates it to his own use, such party may be required not only to restore the fund itself or pay over an amount

---

[3] *Phillips* v. *Commissioner, supra; Phillips-Jones Corporation* v. *Parmley, supra; Hulburd* v. *Commissioner*, 296 U. S. 300; *Tooley* v. *Commissioner*, 121 Fed. (2d) 350; *Continental Oil Co.* v. *Helvering*, 100 Fed. (2d) 101; *Irvine* v. *Helvering*, 99 Fed. (2d) 265; *Michael* v. *Commissioner*, 75 Fed. (2d) 966; certiorari denied, 296 U. S. 579; *Commissioner* v. *Oswego Falls Corporation*, 71 Fed. (2d) 673; *Harwood* v. *Eaton*, 68 Fed. (2d) 12; certiorari denied, 292 U. S. 636; *Liquidators of Exchange National Bank of Shreveport* v. *United States*, 65 Fed. (2d) 316; *Hatch* v. *Morosco Holding Co.*, 50 Fed. (2d) 138; certiorari denied, 284 U. S. 668; *United States* v. *First Huntington National Bank*, 34 Fed. Supp. 578; affd., 117 Fed. (2d) 376; *Suisman & Blumenthal, Inc* v. *Eaton*, 4 Fed. Supp. 763; affd., 74 Fed. (2d) 716; *United States* v *Prince*, — Fed. Supp. — (U. S D. C., So. Dist. of New York, March 19, 1942); *Fostoria Milling & Grain Co.*, 11 B. T. A 1401; *A. H. Graves*, 12 B. T. A. 124; *Wire Wheel Corporation of America*, 16 B. T. A. 737; affd., 46 Fed. (2d) 1013; *Phil Gleichman*, 17 B. T. A. 147; *American Trust Co., Trustee*, 18 B. T. A. 580; *South Penn Oil Co.*, 20 B. T. A. 1180; reversed on another point, 68 Fed. (2d) 420; *William A. Moorhead*, 22 B. T. A. 858; *A. V. Stegeman*, 25 B. T. A. 949; *American Equitable Assurance Co. of New York*, 27 B T. A. 247; affd., 68 Fed. (2d) 46· *Shamrock Oil Co.*, 29 B. T. A. 910; affd., 77 Fed. (2d) 553; certiorari denied, 296 U. S. 632; *Paulyn E. Tomfohr*, 44 B. T. A. 730; *Fletcher Trust Co., Trustee*, 1 T. C. 798.

equal thereto, but in addition may be required to respond in interest, usually at the legal rate prescribed by state law, for the period of such withholding or misappropriation.[4]   In the cases cited, the assets of the transferor received by the transferee were sufficient to pay only a part of the transferor's liability for tax and interest, and the interest actually charged and paid was not interest on the deficiency chargeable against the taxpayer transferor under section 292 and payable by the transferee under his duty to account to creditors of the transferor for assets received in distribution, as in the instant case, but was interest chargeable against the transferee himself, at the legal rate prevailing in the particular state, not for failure to pay a tax when due, but for the improper withholding or use of the trust fund.   The petitioner here was charged with and paid no such interest, and, inasmuch as the liability of each transferor for both tax and interest has by application of the trust fund doctrine been settled in full, it is, of course, obvious that interest never will be charged against the transferee here, as was done in the *Snook, Buzard, Watson, Garcin*, and *Cappelini* cases above. It should also be noted in passing that, inasmuch as the assets received by the petitioner here were in each instance sufficient to have paid the full liability of the transferor for its tax plus accrued interest, a charge of interest against the petitioner on the same basis as the interest charged in the cases discussed in this paragraph would have resulted not in the payment of interest on the amount of the deficiency only as was true here, but in the payment of interest on interest as well as interest on the amount of the deficiency in tax.   The facts show that no such interest was charged or collected.

Other than to say that argument in support of a contrary conclusion "rests upon an attenuated and unjustified application   *   *   * of the so-called trust fund doctrine," no attempt is made in the majority opinion to reconcile the holding therein with the principles laid down in the cases previously cited in this dissent and in numerous cases decided by this and other courts outlining the nature, scope, and applicability of the trust fund doctrine, and yet *Koch* v. *United States, supra*, reviewing the law of the case and reaching the opposite conclusion, was decided by the United States Circuit Court of Appeals for the Tenth Circuit as recently as November 8, 1943.  If I am able to read the majority opinion aright, the conclusion that section 311, *supra*, imposes on the transferee "as its interest" so much of the interest as accrues after the transfer of assets rests not upon the language of the statute nor upon the decided cases, but upon language appearing in the reports of the Finance Committee of the Senate

---

[4] See 33 Corpus Juris, pages 182, and 200 to 204, for general rules allowing interest in instances not expressly covered by contract or statute.  See also *Agency of Canadian Car & Foundry Co., Ltd.* v. *American Can Co.*, 258 Fed. 363, 371, and following, for discussion generally of rules allowing interest at law and in equity.

and of the Conference Committee, of the 69th Congress, 1st session, dealing with section 280 of the bill which became the Revenue Act of 1926, that section being the first of the transferee sections of the various revenue acts. The Senate Finance Committee did have in mind, and the Senate adopted, a provision limiting the interest includable in "the liability of the transferee" to that which had accrued against the transferor at the time of the transfer of assets.[5] In conference, however, the section was completely rewritten in the form in which it now appears, and the provision restricting and limiting the interest includable in "the liability of the transferee," as passed by the Senate, was omitted. The section as enacted does not, as the majority here concludes, impose any interest "as such" upon the transferee or anyone else, and the majority opinion is wholly silent as to where and in what language the imposition occurs. Nor does the said section, as might be and seemingly has been inferred from some of the language contained in the Conference Committee report, contain any provision limiting the interest liability of the transferor collectible from the transferee under the trust fund doctrine to the interest which had accrued at the time of the transfer of the assets. The interest at 6 percent per year "for reimbursing the Government at the usual rate for loss of the use of the money due it," referred to in the Conference Committee report, obviously deals with interest chargeable under general law and at prevailing state rates for the improper withholding or misappropriation of a fund impressed with a particular use, as in *United States* v. *Snook, supra,* and companion cases, but which, as previously noted. will never be charged or collected in the instant case, inasmuch as the assets of the transferor received by the petitioner were in each instance sufficient to satisfy the liability of the transfer for both tax and interest and such liability has been satisfied by invoking and applying the trust fund doctrine.

For reasons set forth above, I am unable to find any basis in fact or in law for the deduction by the petitioner as interest of any part of the amounts paid by it in respect of the liability of the various transferor corporations, and respectfully note my dissent.

KERN, *J.*, agrees with this dissent.

---

DISNEY, *J.*, dissenting: I can not agree with the majority opinion that the petitioner had such relation to the liability for the income tax of its transferors, as to permit its deduction of interest thereon from the date of transfer to it. I am able, in the pertinent facts, to

[5] Section 280 (c), H. R. 1, 69th Cong., 1st sess. In the Senate of the United States, February 1 (calendar day, February 12), 1926.

find only the ownership of property subject to the payment on the transferors' tax with no personal liability. Though some cases, notably *New McDermott, Inc.*, 44 B. T. A. 1035, do not seem to require personal liability as a prerequisite to deduction of interest, in my opinion section 23 (b) of the various revenue acts, as to interest, does not permit such a result; nor can we, in my view, find authority elsewhere for the deduction. I think the proper rule on this question was very recently stated in *Koch* v. *United States*, 138 Fed. (2d) 850 (C. C. A., 10th Cir., Nov. 8, 1943), where a situation identical in principle to that here involved was presented, and the court held that the transferees were not entitled to deduct interest for the period after the date of receipt of the assets of transferors, upon the tax liability of such transferors, the court's view being based upon the fact that the obligation discharged was not the individual obligation of the taxpayer. I respectfully dissent.

BLACK and KERN, *JJ.*, agree with this dissent.