Henry W. Breyer, Jr. v. Commissioner. Edith S. Breyer v. Commissioner. Catharine Breyer Van Bomel v. Commissioner.
Breyer v. Commissioner
Docket Nos. 111808, 111835, 111837.
United States Tax Court
1944 Tax Ct. Memo LEXIS 393; 3 T.C.M. (CCH) 48; T.C.M. (RIA) 44015; January 20, 1944
*393 Prior to decedent's death, petitioners received certain property from him, given to them in contemplation of death, and also the right to purchase from decedent's estate certain stock at a fraction of its value. The latter property was acquired by petitioners from the estate prior to the imposition of the tax in question. All such property was deemed to be includible in decedent's estate and thus subject to the estate tax. In 1938 and 1939 petitioners, pursuant to an agreed settlement, paid the tax as finally agreed upon by them and the Commissioner, together with interest thereon. Held, the interest so paid is deductible from their several individual gross incomes. Koppers Company, 3 T.C. 62, followed. Joseph Gilfillan, Esq., for the petitioners. Brooks Fullerton, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioners' income taxes as follows: Petitioner
Year
Amount
Henry W. Breyer, Jr.
1938
$50,190.33
1939
2,188.61
Edith S. Breyer
1938
81,200.00
1939
4,325.92
Catharine Breyer Van Bomel
1938
23,006.37
1939
1,209.03
The petitioners paid *394 certain items of interest "on an agreed sum in satisfaction of their liability at law and in equity as [transferrees] of the assets of the decedent's estate," such sum representing an agreed deficiency in the Federal estate tax against the Estate of Henry W. Breyer, deceased. The sole issue is whether the petitioners are entitled to deduct such interest in their individual income tax returns. Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. In so far as they are material to the issue they are as follows: Henry W. Breyer died testate on March 5, 1936. He was survived by his wife, Edith S. Breyer, and their two children, Henry W. Breyer, Jr. and Catharine Breyer Van Bomel. The Girard Trust Company, a corporation, Edith S. Breyer, Henry W. Breyer, Jr. and Wilbur S. Scott, hereinafter called the executors, were appointed the executors of the decedent's will. They duly qualified and functioned as such. The petitioners Henry W. Breyer, Jr. and Edith S. Breyer filed their income tax returns for the taxable years with the collector of internal revenue for the first district of Pennsylvania, and the petitioner Catharine Breyer Van Bomel *395 filed her income tax returns for such years with the collector of internal revenue for the second district of New York. On July 23, 1930 Henry W. Breyer entered into three separate contracts with his wife, his son and his daughter, granting to them the right to purchase 50 per cent, 25 per cent and 25 per cent, respectively, of all of the stock of the Henry W. Breyer Company, hereinafter called the company, owned by him at the time of his death, at the price of $25 per share. On the same day Edith S. Breyer and Henry W. Breyer, Jr. agreed to sell to Henry W. Breyer at $25 per share all or any part of the stock of the company owned by her or him at the time of death. At the time of his death the decedent owned 16,000 shares of the company stock. On or about August 5, 1936 the petitioners, Edith S. Breyer, Henry W. Breyer, Jr. and Catharine Breyer Van Bomel (at that time Catharine Breyer Worrilow) paid to the said executors the sums of $200,000, $100,000 and $100,000, respectively, and received therefor 8,000, 4,000 and 4,000 shares, respectively, of the company stock. On August 6, 1936 the executors filed an estate tax return for the estate of Henry W. Breyer, deceased, with the *396 collector of internal revenue for the first district of Pennsylvania and paid the estate tax of $2,675,396.33 due thereon. Upon examination of the return the Commissioner proposed to assess additional Federal estate tax. The additional tax was based on the inclusion in the estate of the 16,000 shares of the company stock at their full fair market value and of various gifts made in contemplation of death. Following negotiations, the Commissioner mailed on June 23, 1938 to the executors a deficiency notice showing a deficiency of $10,732,916.16. On September 20, 1938 the executors filed a petition with the United States Board of Tax Appeals asking a redetermination of the deficiency. Thereafter negotiations for settlement were resumed with the Commissioner and resulted in an "Agreement to Stipulate" dated December 8, 1938. The following are excerpts from that agreement: "1. In lieu of the Tax Deficiency set forth in the Deficiency Notice dated June 23, 1938, in the amount of $10,732,916.16 which figure includes an allowable credit for State Taxes in the amount of $2,654,704.98, there is to be a Tax Deficiency determined in the amount of $6,036,191.85, which figure includes an allowable *397 credit for State Taxes in the amount of $1,751,264.63, after allowing as additional deductions from decedent's gross estate executor's commissions, attorneys' fees, Court costs, general administration expenses and any and all other properly deductible items to an aggregate total of $915,000.00. Edith S. Breyer, Henry W. Breyer, Jr., and Catharine Breyer Van Bomel (formerly Catharine Breyer Worrilow) agree, in addition, that if in the complete administration of the Estate of Henry W. Breyer, Deceased, the entire amount of $915,000.00 is not expended for executors' commissions, attorneys' fees, court costs, general administration expenses and any and all other properly deductible items, they will jointly and severally be liable to pay the additional deficiency of estate tax which would have been due had the unpaid portion of such $915,000.00 been disallowed as a deduction in computing the tax liability herein agreed upon (all other factors of settlement remaining the same) and as a part of this settlement they will furnish their separate covenant and agreement to pay such additional amount when the estate is closed or within five years from the date of the final order of the Board of *398 Tax Appeals in this case. * * * * *
"3. As an inseparable term of said settlement the undersigned individuals have also submitted a collateral agreement, reading in full as follows, and a copy of which will be associated with their individual files: In consideration of the approval by the Commissioner of Internal Revenue of a certain proposal of settlement of the Federal estate tax liability of the Estate of Henry W. Breyer, deceased, pending before the United States Board of Tax Appeals as Docket No. 95546, and as an inseparable term of said settlement, the undersigned individual, a beneficiary of said estate, hereby voluntarily and under advice of counsel, agrees that the fair market value of the stock of the Henry W. Breyer Company, as of March 5, 1936, (the date of the decedent's death) is not in excess of $256.971976 per share; that said value of $256.971976 per share takes into consideration all matters properly to be considered in determining the fair market value of said stock as of said date; that said value may be used by the Bureau of Internal Revenue in determining the undersigned's tax liability to the Federal Government resulting from a sale or other disposition *399 of said stock, to the extent that its fair market value on or about March 5, 1936, may be a proper factor in such determination; and that this instrument may be introduced into evidence without objection by the undersigned, her (his) executors, administrators and assigns, as an admission against interest, in any controversy affecting the Federal Tax Liability of the undersigned for any taxable period beginning on or after March 5, 1936, or for any taxable period within which the date of March 5, 1936, may fall. "4. Under this basis of settlement there will be a Federal Estate Tax deficiency in payment of $4,284,927.22, exclusive of interest, after allowance of credit for State Taxes to be paid the Commonwealth of Pennsylvania in the amount of $1,751,264.63, for which the proof of payment, as required by The Federal Estate Tax Regulations, will be made. Upon acceptance of this agreement, the undersigned agree to pay to the Commonwealth of Pennsylvania the sum of $1,751,264.63, and upon notice and demand agree to pay to the Collector of Internal Revenue the sum of $4,284,927.22, together with interest thereon. Of the $6,036,191.85 (the total of the aforementioned Federal and State *400 taxes) the Executors are liable for and will pay $900,788.63, with interest; Edith S. Breyer will pay $2,567,701.61, with interest, in satisfaction of her liability at law and in equity as a transferee of the assets of the decedent's estate; Henry W. Breyer, Jr., will pay $1,283,850.81, with interest, in satisfaction of his liability at law and in equity as a transferee of the assets of the decedent's estate; and Catharine Breyer Van Bomel (formerly Catharine Breyer Worrilow) will pay $1,283,850.80, with interest, in satisfaction of her liability at law and in equity as a transferee of the assets of the decedent's estate. In the event that the payments as specified above are not made in accordance with the provisions hereof, the Commissioner reserves all his rights under law and equity for the collection of the total deficiency and interest." * * * * *
The petitioners executed the collateral agreement set forth in paragraph 3. Pursuant to the settlement agreement a stipulation of deficiency was filed on December 14, 1938 with the United States Board of Tax Appeals, which thereupon entered its decision in the case. On December 15, 1938 the petitioners executed an agreement pursuant *401 to paragraph 1 of the agreement to stipulate dated December 8, 1938. Under that agreement they, as "promissors", agreed to pay to the United States an additional Federal estate tax which might become due if the administration costs, etc., were less than $915,000. In accordance with the agreement to stipulation, payments were made by the executors and the petitioners as follows: 1938
Payee: Register of Wills of
Payee: Collector of Internal Revenue
Montgomery County,Pa.
Date Paid
Tax
Interest
Date Paid
Tax
Executors (Girard Trust Co., et al.)
(Mar. 3, 1937
$ 88,000.00
Dec. 20, 1938
$ 639,443.97
$ 58,706.21
(Dec. 13, 1938
261,344.66
Edith S. Breyer
Dec. 20, 1938
1,822,743.77
167,342.85
Dec. 13, 1938
700,957.84
Henry W. Breyer, Jr.
Dec. 20, 1938
83,671.23
Dec. 13, 1938
350,481.07
Dec. 28, 1938
911,369.74
Catharine Breyer Van Bomel
Dec. 20, 1938
911,369.74
83,671.24
Dec. 13, 1938
350,481.06
$4,284,927.22
$393,391.53
$1,751,264.63
4,284,927.22
$6,036,191.85
1939
Payee: Guy T. Helvering, Commissioner of Internal Revenue
Date
Tax
Interest
Edith S. Breyer
May 2, 1939
$ 59,651.91
$ 6,797.05
Henry W. Breyer, Jr.
May 2, 1939
29,825.95
3,398.53
Catharine Breyer Van Bomel
May 2, 1939
29,825.95
3,398.53
Totals
$119,303.81
$13,594.11
*402 On March 5, 1936 the value of the total assets of the Estate of Henry W. Breyer, deceased, which came into the hands of his executors as of the date of his death, as shown by the First Account filed by such executors, was $9,161,924.38. The obligations of the wife, son and daughter of the decedent to the Estate of Henry W. Breyer, deceased, under a statute enacted by the Assembly of the Commonwealth of Pennsylvania, being Pennsylvania Act of 1937, P.L. 2762, were never included in the executors' accounts. The liabilities of the estate, which were obligations of the executors as of the date of death, were determined on December 8, 1938 to be $9,508,375.08. On December 8, 1938 the value of the assets of the estate of Henry W. Breyer, deceased, in the hands of the executors, was $5,725,320. The obligations of the wife, son and daughter of the decedent to the Estate of Henry W. Breyer, deceased, under a statute enacted by the Assembly of the Commonwealth of Pennsylvania, being Pennsylvania Act of 1937, P.L. 2762, were not included in computing that amount. Since December 8, 1938, exclusive of taxes paid, the executors have expended $703,283.67 for administration purposes. On December *403 8, 1938 the total amount of the Federal estate tax and Pennsylvania estate and inheritance taxes due on the estate of Henry W. Breyer deceased, was $6,036,191.85. Except for a capital gain of $15,874.66, and except for minor amounts expended in the ordinary course of administration, the value of the net assets of the estate of Henry W. Breyer, deceased, in the hands of the executors on August 6, 1936 was not materially different from the value of the net assets of the estate at date of death. The obligations of the petitioners to the estate of Henry W. Breyer, deceased, under a satute enacted by the Assembly of the Commonwealth of Pennsylvania, being Pennsylvania Act of 1937, P.L. 2762, were not included in computing the net assets as of the date of death nor as of August 6, 1936. In accordance with the will of the decedent the executors paid to the trustees of three trusts created by his will the following amounts: Trustee of Trust Benefit of
Amount Paid
Edith S. Breyer
$1,847,371.28
Henry W. Breyer, Jr.
923,685.63
Catharine Breyer Van Bomel
923,685.64
$3,694,742.55
The last of such payments was made on or about October 17, 1939, and thereupon there *404 were no more assets in the hands of the executors. The record discloses the following additional facts: Upon the resumption of negotiations for the settlement of the proposed tax, subsequent to the filing of the executors' petition with the United States Board of Tax Appeals, the petitioners were represented by George Rogers, Esq. and Joseph Gilfillan, Esq. The executors were represented by Edwin J. Gilfillan, Esq., who also represented the petitioners individually. The matters of the individuals and the executors in respect to Federal estate tax were handled as one matter. A conference was held with the Commissioner of Internal Revenue in Washington about November 15, 1938, at which Edwin J. Gilfillan, George Rogers, and Aubrey Marrs, Head of the Technical Staff of the Commissioner's office, were also present. The Commissioner stated that he knew there was not sufficient cash in the estate to meet his tax demands and insisted that those who owed the estate should be parties to the closing agreement (later signed on December 8, 1938). The petitioners' counsel stated that under the Pennsylvania law the petitioners owed the estate over $5,000,000, and asked if it would be satisfactory *405 to the Commissioner if the petitioners paid their liability to the Commissioner. The Commissioner stated that he would approve such procedure, if they would agree to bind themselves to pay him and the State of Pennsylvania. The petitioners' counsel and the Commissioner discussed the effect of the Pennsylvania statutes, with which the Commissioner was familiar. The petitioners' counsel further stated that the obligation of the petitioners to the estate bore interest and that it was a deductible item under the Pennsylvania statutes. The Commissioner then stated that the petitioners, in paying the money due the estate, himself, and the State of Pennsylvania (as tax due to it), would not change the obligation or nature of their payment. He also required the petitioners to give their personal bond to pay the taxes on the unexpended portion of the $915,000. The executors requested the petitioners to pay the amount of the tax directly to the Commissioner rather than to them. The phrase "in satisfaction of her (his) liability at law and in equity as a transferee of the assets of the decedent's estate" was incorporated in the agreement to stipulate upon the requirement of Marrs. That phrase *406 was substituted for the words "is liable for and" appearing in the draft of paragraph 3 thereof submitted by Rogers. The fair market value of the company stock on August 5, 1936 was $256.971976 per share. In her income tax returns for the years 1938 and 1939 the petitioner, Edith S. Breyer, deducted $167,342.85 and $6,797.05, respectively, as interest paid. In his returns for the same years the petitioner, Henry W. Breyer, Jr., deducted $83,671.23 and $3,398.53, respectively, as interest paid; and in her returns for the same years the petitioner, Catharine Breyer Van Bomel, deducted $83,671.24 and $3,398.53, respectively, as interest paid. The interest so claimed was statutory interest on the deficiency in estate tax paid by the several petitioners. The respondent disallowed all deductions with the following explanation: "The item of * $167,342.85 and $6,797.05 in the years 1938 and 1939, respectively, and representing interest on deficiencies of Federal estate and Pennsylvania inheritance taxes assessed against and due from the Estate of Henry W. Breyer and paid by you as a transferee of assets of that estate, have been disallowed as deductions in computing your net income for *407 the aforesaid taxable years." Opinion VAN FOSSAN, Judge: The respondent's position, on which he now justifies his disallowance of the claimed deductions, is that the petitioners were liable both at law and in equity as transferees of the decedent's property; that as such transferees they were liable for the estate tax due from the executors; that the petitioners agreed to pay, and did pay, the stipulated sums in satisfaction of such liability and that in doing so they paid the debt of another. Therefore, he argues, the interest paid by them on the debt of another person is not deductible in computing their individual income taxes. The petitioners contend that they were not liable as transferees and that during 1938 they paid interest on their own personal indebtedness to the decedent's estate by virtue of the operation of Pennsylvania law. They further argue that during 1939 they paid interest as promissors on their personal indebtedness specifically imposed on them under the contract of December 8, 1938. They contend, therefore, that all sums paid by them as interest are deductible. Respondent pitches his case on the *408 contention that petitioners were transferees and paid the interest as such. Assuming, as contended by the respondent, that the petitioners' status as transferees is unquestionably established, we have here a situation that is governed in principle by our recent decision in Koppers Company, 3 T.C. 62. In that case the petitioner, as sole stockholder or as transfered of a transferee, had received in liquidation all the assets of two Canadian corporations in 1933 and of eight Delaware corporations in 1936. Certain taxes for 1931 and 1934 were due from the Delaware corporations and taxes for 1931 and 1932 were due from the Canadian corporations. The petitioner paid the taxes and interest thereon in 1938 and claimed a deduction for the interest so paid. In that case we said: Except as to Koppers Kokomo Company, separately dealt with hereinafter, the question thus posed is what amount of such interest, if any, paid by the petitioner as a transferee was interest on its obligations as distinguished from those of its transferors under section 311 of the Revenue Act of 1938. ** That section provides, inter alia: (a) Method of Collection. - The amount *409 of the following liabilities shall * * * be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title * * *: (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title * * *. That provision may well be ambiguous. Certainly the court cases and those of the Board of Tax Appeals construing the nature and extent of transferee and similar liabilities are not reconcilable. That inconsistency does not result from any difference of opinion as to the extent of the liability of a transferor. It arises in the character and measure of the liability of the transferor collectible as such from the transferee. Thus there was no break in the liability here of each of the transferor corporations to pay their respective deficiencies together with interest thereon from the "date prescribed for the payment of the tax * * * to the date the deficiency *410 is assessed". Section 292 of the Revenue Acts of 1928 and 1934. But we approach the question from the standpoint of the transferee. It paid and seeks to deduct interest on the deficiencies determined against the transferor corporations. Was there any break in the liability of the transferors which section 311, supra, imposed as such upon petitioner, transferee? The record does not show that the deficiencies plus the interest thereon, when paid by the petitioner, exceeded the value of the transferred assets when received by the petitioner. The argument that there was no break thus rests upon an attenuated and unjustified application, we think, of the so-called trust fund doctrine. The several transferor corporations distributed their assets here to petitioner. That event, we think, measured the liability of each transferor imposed as such upon the transferee, petitioner, by section 311, supra. At that time each transferor owed respondent the amount of its tax deficiency together with interest thereon from the date of its determination. The petitioner took the assets encumbered with those debts. The debts as well as the assets then became those of petitioner. And the interest *411 which thereafter accrued on those debts was therefore interest on the obligations of petitioner. That was the intended and accomplished effect of section 311, supra. Any doubt of that fact is removed by the legislative history of the section. Two pertinent conclusions, of course, follow. The entire amount of the liabilities of the present transferors for their tax deficiencies and interest thereon to the time of the distribution of their assets to petitioner in liquidation were paid by petitioner as a part of its cost basis of the assets received and not as its interest as such. Therefore none of this amount is deductible by petitioner under section 23 (b), supra. Lifson v. Commissioner, 98 Fed. (2d) 508; cert. denied, 305 U.S. 662; Automatic Sprinkler Co. of America, 27 B.T.A. 160. On the other hand, the interest on the deficiencies for the period after the petitioner received the assets of the transferor corporations was paid qua interest by the petitioner and is therefore deductible by it under section 23 (b), supra. See Lenore S. Robinette v. Commissioner, 139 Fed. (2d) 285; *412 Scripps v. Commissioner, 96 Fed. (2d) 492; cert. denied, 305 U.S. 625; Penrose v. United States, 18 Fed. Supp. 413; Commissioner v. Beebe, 67 Fed. (2d) 662; United States v. Snook, 24 Fed. (2d) 844; Martin Thomas O'Brien, 47 B.T.A. 561; New McDermott, Inc., 44 B.T.A. 1035; Estate of John Edgerly Morrell, 43 B.T.A. 651; Harvey M. Toy, 34 B.T.A. 877; R. T. Buzard, 29 B.T.A. 981; C. P. Ford & Co., Inc., 28 B.T.A. 156; Continental Baking Co., 27 B.T.A. 884; Frederick L. Watson, 25 B.T.A. 971; Wayne Body Corp., 24 B.T.A. 524; Edward H. Garcin, 22 B.T.A. 1027. In so far as Helen B. Sulzberger, 33 B.T.A. 1093, and Inez H. Brown, 1 T.C. 225, are inconsistent with *413 this opinion, those cases will no longer be followed. The same basic principle pervades all of the cases cited in the Koppers Company case. The inconsistent decisions of Helen B. Sulzberger, 33 B.T.A. 1093, and Inez H. Brown, 1 T.C. 225, on which respondent here strongly relies, were specifically overruled. The Sulzberger case involved the payment of Federal estate taxes and interest thereon by the beneficiaries. The Brown case involved gift taxes. See also Ralph J. Green, 3 T.C. 74. In the present case certain of the property transferred to the petitioners and thus made subject to the additional tax burden was given to them by the decedent at various times prior to his death. Petitioners also received the company shares in August 1936, well within the statutory one-year period provided for the imposition of the tax. [1] The interest in question, under the cited section, dated from one year after decedent's death. The property, therefore, was acquired by the petitioners prior to the date on which the tax became due and payable and the interest on the agreed deficiency in tax *414 paid by them in both 1938 and 1939 was thus paid as interest on their own obligations. It is properly deductible from their respective gross incomes for those years. It is, therefore, unnecessary to consider other contentions advanced by petitioners as to which cogent and convincing arguments are presented. Decisions will be entered under Rule 50. Footnotes
*. Different amounts as to the two other petitioners.↩
**. See its counterpart, section 316 (a) of the Revenue Act of 1926.↩
1. SEC. 305. (a) [Revenue Act of 1926.] The tax imposed by this title shall be due and payable one year after the decedent's death, and shall be paid by the executor to the collector.↩