FREDERICK L. WATSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELBRIDGE WATSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ARTHUR WATSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28475, 28476, 28477.   Promulgated March 23, 1932.

*Arthur W. Blakemore, Esq.*, for the petitioners.
*H. B. Hunt, Esq.*, for the respondent.

974

OPINION. ·

SMITH: Petitioners' contention, that the statute of limitations bars assessment of this deficiency against them as transferees, requires little discussion. The corporate return for 1920, filed March

15, 1921, was neither signed nor sworn to and was accordingly insufficient to start the running of the statute. *Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245. It is indicated that an amended consolidated return was filed on April 21, 1924, and, assuming that such return was properly executed, the five-year period for assessment and collection from the taxpayer would not expire until April 21, 1929, or subsequent to the enactment of the Revenue Act of 1926. The applicable provision of that act is accordingly section 280 (b) (1), and the period of limitation in respect to assessment and collection against a transferee would not expire until long after the determination of the liabilities here in question and the appeals therefrom.

Respondent contends that petitioners are liable as transferees of assets of Watson Brothers, Inc. It is his contention that the acquisition of the assets by petitioners, its stockholders, on December 31, 1920, was for an inadequate consideration, leaving the corporation with insufficient assets to pay its debts, and that the transfer of these assets to petitioners was accordingly, to the extent of such excess value, a distribution of corporate property to them, as stockholders, in fraud of creditors. In the alternative, he charges that, if it be found that the acquisition of these assets was for a sufficient consideration, these petitioners are liable as transferees, by reason of the distribution to them, as stockholders, in 1923, of all of the assets of the corporation upon its liquidation, these assets consisting of three notes for $20,000 each.

Section 280 of the Revenue Act of 1926 provides, so far as material, as follows:

(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in ·the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title * * *:

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

The facts of record show that it was the intention of the stockholders on December 31, 1920, to dissolve the corporation, to take over its assets, and, from January 1, 1921, to carry on the business as partners. The petitioners offered to buy the assets of the corporation " and to pay for the same the sum of $60,000, and as part of the consideration and purchase price, assume all outstanding debts and obligations and liabilities of the corporation as they shall appear upon the books of the corporation as at December 31, 1920." The sum of $60,000 was to be paid by three negotiable promissory notes of $20,000 each, dated December 31, 1920, and payable six months after date, with interest at the rate of 6 per cent per annum.

The resolution of acceptance of the offer provided that the notes should be distributed pro rata among the stockholders in proportion to their holdings of capital stock. It thus appears that each petitioner had a right, from the date of the acceptance of the offer to purchase, to demand from the corporation the return of his note. In this situation it must be held that the giving of the notes was an act devoid of substance. The fact is that all the assets of the corporation were turned over to the petitioners as of December 31, 1920, and the petitioners paid not only the liabilities of the corporation, as shown by its books of account, but other liabilities as well. The petitioners must be held to be transferees of the assets of the corporation and, as such, liable for its debts to the extent of the value of the assets received, plus interest on the value of such assets at 6 per cent per annum, the legal rate in Massachusetts, from December 31, 1920, the date of distribution.

The next question is the value of the assets distributed to each of the petitioners. The balance sheet of the corporation at December 31, 1920, shows assets in excess of liabilities, other than capital liabilities, of $237,067.60. The petitioners contend, however, that the inventory of mica on hand of $106,165.24 was in excess of the fair market value of the inventory at that date and that the actual market value of the mica was much below that figure. This issue is disposed of by the finding that the valuation used represents actual market value on that date. The figure represents the opinion of the petitioners as at the close of the calendar year 1920, which was cost less 25 per cent. Petitioners' opinion, formed more than 10 years after that date, that the market value was at that time 50 per cent below cost, and the present opinion to the same effect of a witness introduced by them, can not be given the weight of their opinion in the determination of value made at the close of 1920 with knowledge of existing facts. This is especially true when it is taken into consideration that petitioners were mica experts, with exceptional knowledge and judgment as to market conditions.

The petitioners further contend that the good will of the corporation was without value. It is shown in the balance sheet as having a value of $150,000. It was arbitrarily set up on the books of the corporation in 1917. From a consideration of the entire record we are of the opinion that the good will of the corporation had no cash value and we agree with counsel for the petitioners that it should be eliminated for the purpose of determining the net value of the assets over the liabilities. Eliminating the book value of the good will from the assets, it is found that the assets had a value in excess of liabilities of $87,067.60.

Subsequent to January 1, 1921, the petitioners liquidated certain liabilities of the corporation which were not shown upon its books of

account at December 31, 1920. Taxes had accrued against the corporation in the amount of $15,826.85, which the petitioners paid. The deduction of this amount from the $87,067.60, above referred to, leaves the net value of the assets received by the petitioners as $71,240.75.

The petitioners claim that following the acquisition of the assets they paid additional debts, totaling approximately $15,000, which represented liabilities of the corporation. But we are unable under the proof to verify such liabilities. It is true that the petitioners paid amounts for auditing the books of account either of the corporation or of the partnership, but we can not determine that these constituted any liabilities of the corporation on December 31, 1920. Upon the record it must be held that the petitioners received net assets of the corporation of $71,240.75 and that these assets belonged to the petitioners in equal shares. We are therefore of the opinion that each petitioner is liable as a transferee of the assets of the corporation to the amount of $23,746.92, plus interest at 6 per cent per annum, the legal rate in Massachusetts, from December 31, 1920, the date of distribution.

In respect to respondent's denial of the corporation's claim of affiliation, petitioners contend that substantially all of the stock of the Renim Specialty Company and the Mica Condenser Company was owned or controlled by the same interests during the taxable year. We have set out in the findings of fact the ownership of this stock during that period as shown by petitioners' proof. From this it will be seen that all of the stock of Watson Brothers, Inc., was owned equally by the three petitioners, that 80 per cent of the stock of the Renim Specialty Company was owned by two of the petitioners, the remaining 20 per cent standing in the names of F. G. Crowley and W. J. Barkeley, and 78 per cent of the stock of the Mica Condenser Company was owned by petitioners, the remaining 22 per cent standing in the names of C. E. Watson, F. G. Crowley, W. J. Barkeley and A. R. Goodwin, none of whom owned stock in Watson Brothers, Inc. No facts are proven showing control of the voting rights of the minority stock by petitioners. Proof that these minority stockholders were employees of Watson Brothers, Inc., does not establish such fact. The petition alleges that the stock issued these employees was bought and paid for by petitioners and issued to them merely as a method of guaranteeing a percentage of the profits, but with the understanding that the actual ownership and voting rights of the stock were to remain in petitioners, but this allegation was denied by the answer and the record contains no proof of such facts. The facts proven fail to show affiliation under section 240 (b) of the Revenue Act of 1918 of the taxpayer corporation with

the Renim Specialty Company and the Mica Condenser Company. *Handy & Harman* v. *Burnet*, 284 U. S. 176; *Ice Service Co.* v. *Commissioner*, 30 Fed. (2d) 230; *Commissioner* v. *Hirsch & Co.*, 30 Fed. (2d) 645; *Black Diamond Coal Co.*, 25 B. T. A. 215; *Conley Tin Foil Corporation*, 17 B. T. A. 65.

In determining the deficiency for the year 1920 against the corporation, respondent disallowed a deduction of $52,843.96 taken by it as a debt ascertained to be worthless and charged off in that taxable year.

We have found that this amount was owing to the taxpayer from the Mica Condenser Company, that the debtor corporation was a total failure in that year, and that this indebtedness was charged off by the taxpayer at the close of the year to profit and loss. The taxpayer's claim to affiliation has been denied, and no question can be raised as to this indebtedness being one arising from an intercompany transaction. We accordingly hold that respondent was in error in his disallowance of this item.

The remaining issue is upon respondent's action in disallowing $120,000 of a total deduction taken by Watson Brothers, Inc., in the sum of $180,000 as representing salaries of $45,000 each, paid to petitioners and a brother employed by the taxpayer. Respondent has allowed a salary of $15,000 to each of these individuals as representing reasonable compensation for services rendered. The burden is accordingly upon petitioners to show that the amount disallowed in fact represented reasonable compensation to be paid for the services performed. Upon this question petitioners have introduced no proof of what would be a reasonable salary for such services. It is merely shown that these sums were voted by the corporation as salaries in January, 1920, and represented approximately 19 per cent of the net sales of the corporation for that year, and that payments in past years of executive salaries had averaged approximately this percentage. We do not think that this proof establishes the fact that the salaries paid were wholly for the services performed or represented only reasonable compensation for such services. The fact that petitioners were owners of all the stock of the corporation and the close relationship to them of C. E. Watson calls for a closer scrutiny of these payments than of salaries voted by corporate directors having no interest other than that of the corporation itself. In *L. Schepp Co.*, 25 B. T. A. 419, we said:

* * * For the purpose of determining taxable net income, the deduction [for salaries] is limited to amounts which are reasonably commensurate with the personal services actually rendered and thus are no more than ordinary and necessary expenses of carrying on the business. Hence the directors' duty to the corporation is no criterion of the Commissioner's duty to limit the

tax deduction within the statutory bounds, and the two are not in conflict. When the Commissioner has made a determination, the taxpayer who attacks it must prove by evidence of the services rendered and their value that a correct determination would exceed that of the Commissioner. Where the payments are to kinsfolk or to shareholders, the proof must also show that they were not influenced by family considerations and were not disguised distributions of profits. See *Botany Worsted Mills* v. *United States*, 278 U. S. 282; *Becker Bros.* v. *United States*, 7 Fed. (2d) 3; *United States* v. *Philadelphia Knitting Mills*, 273 Fed. 657; *Benz Bros. Co.*, 20 B. T. A. 1214; *C. S. Ferry & Sons, Inc.*, 18 B. T. A. 1261; *Home Industry Iron Works*, 8 B. T. A. 1267; *Meyer Hecht*, 2 B. T. A. 319; *Gustafson Mfg. Co.*, 1 B. T. A. 508.

The evidence in the proceedings at bar is in our opinion insufficient to establish the fact that the payments to the four Watson brothers in the amount of $180,000 represented expenses reasonable and necessary in the carrying on of the business and the allowance of $15,000 in the case of each petitioner and of a like amount to the fourth brother, as made by the respondent, is approved.

The deficiency as determined against Watson Brothers, Inc., by respondent should be redetermined in accordance with this opinion.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MATTHEWS concurs in the result.

GOODRICH dissents.

MURDOCK, dissenting: In my opinion, these petitioners are liable for the full amount of any deficiency which may be due in this case.