LEO L. LOWY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59265.    Filed December 6, 1960.

*Maurice V. Seligson, Esq.*, for the petitioner.
*John J. Madden, Esq.*, and *John A. Dunkel, Esq.*, for the respondent.

### OPINION.

RAUM, *Judge:* The only remaining issue in this case relates to petitioner's liability, as transferee of assets of American Rolbal Corporation, for interest on deficiencies in tax of that corporation for the years 1942 and 1943. Deficiencies against the corporation (including additions to tax pursuant to sections 293(b) and 291(a) of the 1939 Code for fraud and failure to file returns) were adjudicated by this Court, and its decision was affirmed by the Court of Appeals for the Second Circuit on March 29, 1955. *American Rolbal Corporation* v. *Commissioner*, 220 F. 2d 749. Shortly thereafter, on June 2, 1955, the Commissioner sent the petitioner a notice that the determinations of the tax liabilities of the corporation disclosed specified deficiencies and penalties and that they, "plus interest provided by law," constituting his liability as transferee of the corporate assets, would be assessed against him. Petitioner then filed a timely petition (which has since been amended) with this Court contesting the determination.

At the hearing of the present case no facts were presented other than those contained in a stipulation, which was thereafter amended by the parties. The entire stipulation, as amended, is as follows:

1. Petitioner is a transferee of the assets of American Rolbal Corporation and is liable, as such transferee, for the following taxes and penalties due and owing by said corporation for the taxable years as follows:

| Taxable Year ended December 31, 1942: | | *50% Pen.* | *5% Pen.* |
|---|---|---|---|
| Income tax | $61,119.83 | $30,559.92 | |
| Declared Value Excess Profits tax | 22,951.66 | 11,475.83 | |
| Taxable Year ended December 31, 1943: | | | |
| Income tax | 28,552.97 | 14,276.49 | $1,427.65 |
| Declared Value Excess Profits tax | 10,570.25 | 5,285.13 | 528.51 |

The sole issue remaining between the parties concerns the date from which interest should be computed on the aforementioned liabilities of the petitioner as transferee.

2. The assets of American Rolbal Corporation were transferred to petitioner, who was the sole stockholder of said corporation, on December 31, 1943 and said assets at that time had a fair market value in excess of $1,000,000.00.

3. The notice of deficiency which advised petitioner of his liability as transferee in the instant proceeding was mailed to petitioner on June 2, 1955.

As simple arithmetic will disclose from the foregoing stipulation, the corporation owes taxes and additions to tax ("penalties") in the aggregate amounts of $126,107.24 for 1942 and $60,641 for 1943. Petitioner, who, as sole stockholder, received over $1 million of corporate assets on December 31, 1943, concedes that as transferee he is liable for these taxes and "penalties." The sole issue left open by the stipulation is "the date from which interest should be computed on the aforementioned liabilities of the petitioner as transferee."

Petitioner contends that he is not liable for any interest prior to June 2, 1955, when the Commissioner sent him the notice of transferee liability; he concedes that, under applicable New York law, he is liable for interest from June 2, 1955, to the date of payment. The Government, on the other hand, argues that the starting points for interest are March 15, 1943 and 1944, in respect of the tax liabilities for the years 1942 and 1943, respectively. Those were the dates when the returns and taxes for the respective years were due.

Much of the confusion surrounding this issue is attributable to the loose manner in which the word "interest" has been used. There are at least two different concepts relating to interest collectible from a transferee—one founded upon Federal statute and the other upon State law—and it is important that they be kept clearly in mind.

The Federal statute itself spells out a liability for interest on a deficiency and fixes it at 6 per cent per annum from the due date. Thus, section 292(a) of the 1939 Code provides that, "Interest upon the amount determined as a deficiency * * * shall be collected as part of the tax, at the rate of 6 per centum per annum from the date prescribed for the payment of the tax * * *." When a tax is not paid the United States becomes entitled, by Federal statute, not only to the tax and additions ("penalties," e.g., for negligence or fraud, section 293), but also for interest at the rate of 6 per cent from the due date, and these additions and interest are collectible together with the basic deficiency by the United States. Such is the right which the Federal statute itself creates in respect of the deficiency in tax, and such is the measure of the taxpayer's liability to the Government. Had there been no transfer of assets by the corporation, such would be the extent of its liability to the United States. However, it did transfer its assets to petitioner in an amount far greater than its total potential liability for taxes, "penalties," and interest. The parties have stipulated that petitioner "is a transferee" of the corporate assets "and is

liable, as such transferee" for specified taxes and "penalties" owing by the corporation for the years 1942 and 1943. The net effect of this stipulation is that the debtor (the corporation) transferred its assets in such manner as to enable the creditor (the Government) to follow those assets in the hands of the transferee in order to satisfy its claim against the debtor. To be sure, the liability of the transferee as such must arise under applicable State law, cf. *Commissioner* v. *Stern*, 357 U.S. 39, but the quantum of the creditor's right—i.e., the amount of tax due, the additions to tax for negligence or fraud, and the amount of interest applicable thereto—must, of necessity, be determined in accordance with the Federal statute. Certainly, it is the Internal Revenue Code and not New York law which fixes the amount of deficiency in tax. And it is similarly the Internal Revenue Code, rather than State law, which spells out the right of the Government to the so-called penalties and interest. These amounts in the aggregate constitute the claim of the United States against the taxpayer-transferor and they similarly measure the claim against the transferred assets.

The confusion engendered by petitioner's position grows out of a situation where the amount of the transferred assets is less than the amount of the creditor's claim, and where, in order to make the creditor whole, it may be necessary to find some liability against the transferee *for interest in respect of the transferred assets.* Such interest, by its very nature, can arise only under State law, and must comply in every respect with applicable State law not only as to rate, but also as to the starting point. Thus, if the transferred assets herein had been equal to only $100,000, substantially less than the amount of the basic deficiencies, they would plainly have been insufficient to satisfy the Government's claim. However, in such circumstances, the transferee would have had the use of the transferred assets over a period of time, and it is quite possible that he would be liable, under State law, for interest, not on the Government's claim against the transferor, but on the amount of the transferred assets, measured from a point of time that would not be earlier than the date of transfer.

The difference between interest which is thus imposed by State law with respect to the transferred assets and liability for interest generated by the Federal statute was clearly articulated a number of years ago in *Henry Cappellini,* 16 B.T.A. 802, 803:

While the courts seem to hold divergent views as to when interest begins to run against stockholders who are liable to creditors of a corporation, we are impressed with the decision in *United States* v. *Snook,* 24 Fed. (2d) 844, as being a fair and equitable rule to be applied in transferee cases. That decision, where the tax liability was greatly in excess of the amount received by the transferees in distribution, holds the transferee liable to the full extent of the amounts re-

ceived by them with interest from "the fair average date of receiving" the sums distributed. Cf. *McWilliams* v. *Excelsior Coal Co.*, 298 Fed. 844. That method of computation represents the maximum liability of the transferees and applies where the tax and interest imposed on the corporate transferor is greater than the amount received in distribution, plus interest from that date. Where the tax and interest thereon is less than the amount distributed to any one transferee, then the liability of such transferee would be limited to the amount of tax and interest thereon.

Accordingly, it is held in these cases that the amount the respondent may assess in each case is the amount of taxes owing by the Masontown Coal Co., plus interest at the rate of 6 per cent per annum from February 26, 1926 [the date from which interest was computed under the Federal statute]; provided, however, that the liability of any one of the petitioners shall not exceed the amount received by him in distribution, plus interest at 6 per cent per annum (the legal rate in Pennsylvania) from the date of distribution. In other words, the maximum amount assessable against any one of the petitioners is the lower amount of either (1) the tax plus interest from February 26, 1926, to date of assessment, or (2) the amount received in distribution, plus interest from the date thereof, viz., August 15, 1920, to date of assessment. In these cases, the amount of tax being less than the amount received in distribution, and February 26, 1926, being a later date than that of the distribution, the amount assessable is $4,268.39, plus interest from February 26, 1926. An order will be entered accordingly in each of the proceedings.

The foregoing analysis has served as the guiding principle in the computation of interest in numerous transferee cases. Cf., e.g., *Louis Costanzo*, 16 B.T.A. 1294, 1297; *Kathleen O'Brien*, 20 B.T.A. 167, 169; *Coca-Cola Bottling Co.*, 22 B.T.A. 686, 706; *Edward H. Garcin*, 22 B.T.A. 1027, 1037 (transferred assets less than deficiency, and interest computed from date of transfer at legal rate provided by New York law), remanded pursuant to stipulation 79 F. 2d 993 (C.A. 4); *Wayne Body Corporation*, 24 B.T.A. 524; *Frederick L. Watson*, 25 B.T.A. 971, 977 (interest at legal rate under Massachusetts law from date of distribution); *Louisiana & Arkansas Railway Co.*, 28 B.T.A. 153, affirmed 70 F. 2d 286 (App. D.C.); *R. T. Buzard*, 29 B.T.A. 981, modified 77 F. 2d 391 (App. D.C.); *Robinette* v. *Commissioner*, 139 F. 2d 285 (C.A. 6), certiorari denied 322 U.S. 745.

A like analysis calls for a decision against petitioner's position herein. Petitioner argues, and quite correctly, that the existence and extent of transferee liability should be determined by State law. Cf. *Phillips* v. *Commissioner*, 283 U.S. 589; *Commissioner* v. *Stern*, 357 U.S. 39. But the quantum of the underlying claim that the creditor is seeking to enforce against the transferee must be determined by the law which created that claim, which in this case is the Internal Revenue Code of 1939, a distinction that appears to have been completely overlooked by petitioner. Of course, as shown by the *Phillips* and *Stern* cases, the transferee proceedings herein are merely a substitute for a remedy against the transferee which must exist in the first in-

stance under State law,[1] but the underlying rights which the creditor is seeking to enforce are rights that have their source in the Internal Revenue Code. It is that law which spells out a liability for interest on a tax deficiency and fixes it at 6 per cent per annum from the date that the tax and returns are due. State law has no more to do with the determination of the amount of this liability than it has with fixing the liability for additions due to fraud or failure to file returns or with the correct computation of the basic tax itself. These are liabilities that are founded on Federal statute. It is therefore wholly inappropriate in this case, where the transferred assets are more than ample to discharge the full Federal liability of the transferor (including interest), to look to State law for the creation of any right to interest. However, as indicated above, where the transferred assets are insufficient, it is true that the creditor may have a further right to collect interest from the transferee, based upon the wrongful use of those assets by the transferee prior to payment.[2] The latter right is one that is founded upon State law, and it is only in such circumstances that it becomes appropriate to investigate State law to determine the rate of interest, the date from which it runs, and the like. Thus, nowithstanding the confusion growing out of some decisions, the fact that the transferred assets here were greatly in excess of the deficiencies, serves to distinguish this case from those where the transferred assets were less than the deficiencies and where interest against the transferee could be imposed, if at all, only by virtue of State law. *Voss* v. *Wiseman*, 234 F. 2d 237 (C.A. 10); *Patterson* v. *Sims*, 281 F. 2d 577 (C.A. 5); *Pallister* v. *United States*, 182 F. Supp. 720 (S.D. N.Y.).

We hold that under the applicable provisions of section 292 of the Internal Revenue Code of 1939 interest at the rate of 6 per cent per annum began to run from the respective dates for the filing of the 1942 and 1943 returns. Although we accordingly do not find it necessary to discuss the New York law in this connection, it may be well to note that we have examined it and do not find any sound basis for petitioner's position that interest under New York law, if the facts warranted its application, would commence to run any later than from December 31, 1943, the date the assets were transferred to petitioner.

Other questions have been discussed by the parties such as whether

---

[1] That a transfer such as is involved herein gives rise generally to a remedy under New York law on behalf of a creditor is not in dispute, for such is the fair inference to be drawn from the stipulation of the parties.

[2] To be sure, the transferee has been allowed a deduction for interest paid for the period following his receipt of the transferred assets, as though the liability therefor were his own, without particular emphasis upon whether such interest was imposed by State or Federal law. Cf. *Commissioner* v. *Breyer*, 151 F. 2d 267 (C.A. 3), affirming a Memorandum Opinion of this Court, and *Koppers Co.*, 3 T.C. 62. But the significant point here is that until the trust fund represented by the transferred assets is exhausted, such interest must be computed under the formula of the Federal statute and not pursuant to a rule of liability fashioned under State law.

interest may be imposed upon interest. No such issues are properly before us. The only issue left open by the stipulation of the parties is "the date from which interest should be computed" on the agreed liabilities. We have decided that issue above, and will not assume that the parties will be unable to resolve any other possible differences between themselves in formulating the

*Decision will be entered under Rule 50.*