Durfee, Judge,
delivered the opinion of the court:
This is a suit for refund of $731,500.46 in interest assessed and collected from plaintiffs with respect to the Federal income and excess profits tax liabilities of National Pneumatic Company (hereinafter “taxpayer”) for the years 1944 and 1945. The taxpayer was a corporation organized under the laws of West Virginia. Its principal office was in New York City. It was duly dissolved in 1949, and all of its assets, subject to its liabilities, were distributed to its stockholders in redemption and cancellation of their stock certificates and in liquidation of the corporation.
*662 Charles Frost was one of the principal stockholders of taxpayer, and as such, he was one of the principal transferees of its assets upon its dissolution. On August 24, 1949, all of the stockholders of taxpayer appointed Charles Frost as their agent to receive, hold, sell, or dispose of the property so distributed by taxpayer. He was to satisfy the debts of the taxpayer, any mortgages or liens against its property, and to hold and distribute to the stockholders what was left over.
Pursuant to an audit of the returns of the taxpayer covering the 2 years here involved (1944 and 1945), among others, the Commissioner of Internal Revenue, on May 26, 1954, forwarded to the taxpayer and to each of its transferees statutory notices of deficiency. The statutory notice showed unpaid income and excess profits taxes in the sum of $1,348,-585.21. Exhibit B attached to the statutory notice computed the book value of assets distributed over liabilities assumed by the transferees to be $3,317,459.43. Exhibit B also contained a statement showing transferee liabilities based on a pro rata distribution of the assets. Taxpayer and its transferees did not agree to the assessments proposed in the statutory notices. However, while the conflict of opinion between this court’s decision in Olympic Radio and Television, Inc. v. United States, 124 Ct. Cl. 33, 108 F. Supp. 109 (1952), red’d 349 U.S. 232 (1955) and the Second Circuit Court of Appeals decision in Lewyt Corp. v. Commissioner, 215 F. 2d 518 (1954) aff’d in part and rev'd in part, 349 U.S. 237 (1955), remained unresolved, settlement could not be effected despite conferences between the parties.
On August 23,1954, taxpayer and all the transferees filed petitions in the Tax Court of the United States for the years covered by the statutory notices. The Tax Court lacked jurisdiction to determine the matters at issue in 1945, because an overassessment was proposed for that year. On May 23, 1955, the Supreme Court resolved the Olympic Radio-Lewyt cases conflict by upholding the Second Circuit in Lewyt. On August 4, 1955, counsel for taxpayer and the transferees moved the Tax Court to amend all the petitions filed by them to conform to the decisions of the Supreme Court which motions were granted by the Tax Court. Upon *663 resolution by the Supreme Court of the conflict of opinion aforementioned, conferences on the administrative level were renewed and agreements settling the issues were reached. Thereupon, in the Tax Court proceedings, stipulations embodying these agreements and determining the tax liabilities of each of the transferees of the taxpayer were executed on August 21, 1957, by the respective counsels for all parties. The stipulations provided for back tax payment in the sum of $790,683.12 pins statutory interest thereon. The Tax Court, in conformity with the aforementioned stipulations submitted to it, entered its orders determining the tax liabilities due from each of the transferees plus statutory interest thereon. These orders were severally dated September 27,1957, October 8,1957, and October 9, 1957.
Thereafter, notices and demands for payment were sent to each of the transferees. The demand included, for the 2 years here involved, delinquency interest of $275,248.77 as well as assessed interest on liabilities, some of which, according to plaintiffs, had been eliminated by the aforesaid stipulations and the orders of the Tax Court.[1] The assessed interest totaled $456,251.69. The total interest due (both assessed and delinquency) was $731,500.46 — the amount now sought in refund. The largess of the interest is due to the fact that it was computed from the dates payment was originally due from the transferor under 26' U.S.C. §§ 292 (a) and 294 (b) (1952 ed.). The total amount due was thereafter paid and suit was brought for refund of the interest.
It is plaintiffs’ position that the interest computations were erroneous in that defendant failed to abide by the decisions of the Tax Court of the United States, which decisions determined the tax liabilities of the transferees pursuant to stipulations by the parties. The Tax Court decisions determined the transferees’ liabilities as to income and excess profits .taxes “plus statutory interest thereon,” and plaintiffs allege that defendant illegally went beyond the quoted phrase by adding so-called delinquency interest to the amounts due. Further, plaintiffs allege that defendant computed interest on certain original tax liabilities which *664 were later reduced or expunged by the Tax Court, and that this action was improper as to the transferees under New York state law.[1]
The correctness of plaintiffs’ position hinges on the determination of the question of whether assumed liabilities exceeded assets received or vice versa. Both parties agree that under two Tax Court decisions, Lowy v. Commissioner, 35 T.C. 393 (1960), and Stein v. Commissioner, 37 T.C. 945 (1962), following Patterson v. Sims, 281 F. 2d 577 (5th Cir. 1960), interest that begins to run against transferees liable for taxes of a transferor under § 311 of the 1939 Revenue Code, 26 U.S.C. § 311 (1952 ed.),[2] is completely determined by Federal law except when liabilities assumed exceed assets received. When liabilities exceed assets, state law governs the date of the assessment of interest. The reason for this rule is set out in Stein v. Commissioner, supra, at p. 961:
* * * In cases where the transferred assets exceed the total liability of the transferor, the interest being-charged is upon the deficiency, and is therefore a right created by the Internal Revenue Code. However, where, as here, the transferred assets are insufficient to pay the transferor’s total liability, interest is not assessed against the deficiencies because the transferee’s liability for such deficiencies is limited to the amount actually transferred to him. Interest may be charged against the transferee only for the use of the transferred assets, and since this involves the extent of transferee liability, it is determined by State law. * * *
In the present case, defendant — believing assets exceeded liabilities assumed, issued notices and demands for payments of the amount stipulated in the Tax Court orders plus statutory interest under 26 U.S.C. §§ 292(a) and 294(b). Plaintiffs contend these interest assessments were erroneous since, *665 according to plaintiffs, liabilities assumed exceeded assets received. If plaintiffs are correct, then state law would govern the date that interest began to run.
Our problem is therefore one of accounting. We must determine from the facts stipulated by the parties whether or not the assets received exceeded liabilities. We turn, therefore, to the findings of fact for our answer.
Finding 15 contains a schedule filed as part of taxpayer’s income tax returns in 1950, entitled “Distributions in Liquidation to Stockholders.” Such schedule shows an excess of book value of assets distributed over liabilities assumed in the amount of $2,542,291.60. However, that schedule did not include taxes assessed and on the rolls of the District Director of Internal Revenue, against taxpayer in the sum of $5,240,118.92. (See finding 9.) It is therefore apparent that at the time of dissolution, liabilities apparently exceeded assets. However, hindsight shows us that these were paper values. Turning again to the distribution schedule in finding 15, the following comments may be made. The record does not contain probative evidence which would indicate that Items #1, 2, 3, 5, and 6 had a market value different from the book value and therefore the latter is accepted here. The parties have stipulated, however, that Item 4 — the 80,000 shares of Redmond stock, had a value of $1,100,000 instead of the book value of $2,075,511.64. (Finding 16.) Further, the $674,866 claim for redetermination of excessive profits was never realized for distribution purposes, since the tax thereon was $539,892.80 (which was paid to the Internal Revenue Service) and the balance satisfied an outstanding assessment of excess profits taxes for 1941. (Findings 10 and 15.) We therefore adjust the value of distributions to the transferees, for the purpose of this action, to read as follows:

Items Distributed Value

$1,221, 383. 40 § ri
56,250. 00 CO
1,100, 000. 00 Tfi
1,217,000.74 U5
4,222. 22 CC
Total $3, 598, 856.36
*666 The liabilities column was a fairly accurate estimate reflecting the actual value of liabilities assumed. Only the first figure has been shown to have changed. Total taxes paid (income and excess profits with attendant interest) equaled $883,969.25. This figure is derived from the table included in finding 10. That table shows the total amount paid by cash to be $960,058.89. Subtracting from that total the amount refunded on May 12,1961, of $76,089.64, the net amount of $883,969.25 is reached. Adjusting the liabilities column in the schedule in finding 15 to reflect the $883,969.25 figure, total liabilities are shown to be $2,806,252.73.
A comparison of the liabilities and assets column shows the assets column figures to be the larger. The difference between the two is $792,603.63. In other words, assets received exceeded by this figure liabilities assumed. This figure is larger than the $731,500.36 interest assessed against and paid by plaintiffs. Since assets received exceeded liabilities assumed, the $731,500.36 interest sum was properly assessed against plaintiffs under the rationale of the Stein case, supra.
Furthermore, there is no adequate reason for believing that the New York law would hold the transferees to lesser interest than they have been charged. The two significant facts are that (a) the transferred assets exceeded the liabilities (including the interest collected), and (b) the transferor-corporation together with the transferee-plaintiffs stipulated in the Tax Court for the assessment and collection of the liability “plus statutory interest,” and the Tax Court’s order provided for payment of the tax liabilities “plus statutory interest thereon.” The most natural meaning of “plus statutory interest” and “plus statutory interest thereon” would cover both deficiency interest (under Section 292 of the Internal Revenue Code of 1939) and delinquency interest (under Section 294). These components are both prescribed by the Federal statute, and both are recognized as parts of the tax. See Lowy v. Commissioner, supra, 35 T.C. 393, 394-395, 397. We have been shown nothing in the New York legislation or decisions which would preclude the transferees and Internal Revenue Service from agreeing that the former should pay all of the tax, including this *667 statutory interest.[3] At least .that would seem to be so where the transferred assets are greater than the tax liabilities (with the interest) and there is nothing to suggest harm to other creditors. In this instance, we find that the assets did exceed the liabilities, and there is no reason to conjure up detriment to third parties.
Plaintiffs are not entitled to recover, and the petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Lloyd Fletcher, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, National Pneumatic Company (hereinafter sometimes referred to as “taxpayer”) was organized as a corporation on February 6,1910, under the laws of the State of West Virginia. Its principal office was at 420 Lexington Avenue, New York, New York. It was duly dissolved on September 9, 1949, and all its assets, subject to its liabilities, were distributed to its stockholders in the manner hereinafter stated, in redemption and cancellation of their stock and in liquidation of the corporation.
2. Charles Frost, with office at the above address, was one of the principal stockholders of the taxpayer during the years here involved, and as such, one of the principal transferees of its assets upon dissolution.
Shortly after voting to dissolve the taxpayer, all its stockholders, by instrument in writing dated August 24, 1949, appointed said Charles Frost, their agent with power, among other powers, to receive and hold on their behalf, any and all property of every kind and nature distributed in liquidation and dissolution of the corporation, to sell or otherwise dispose of such property, to satisfy the debts and any mortgage encumbrance or lien against such property, to hold for their benefit any unexpended avails and to make distribution thereof to them as expeditiously as the same could advantageously be accomplished and to prosecute, or defend, in his own name, or in the name of the taxpayer, and to submit to arbitration, settle, and to accept a compromise with respect to any claim existing in their favor, or *668 against them, based on or involving any property received, or anything resulting from the liquidation and dissolution of the taxpayer or distributions made by its board of directors pursuant thereto. A copy of this instrument was filed at the time with the District Director of Internal Revenue, Upper Manhattan District (now the Manhattan District), of New York.
3. Pursuant to an audit of the returns of the taxpayer covering the two years here involved (1944 and 1945), among others, the Commissioner of Internal Revenue on May 26, 1954, forwarded to the taxpayer and to each of its transferees statutory notices of deficiency. The statutory notice issued to Charles Frost (which exemplifies the statutory notices issued to all the transferees) set forth on page 1 of the statement the tax liabilities of the National Pneumatic Company, transferor, as determined by the Internal Revenue Service, in a tabular form as follows:
Statement
National Pneumatic Company, Transferor
420 Lexington Avenue New York 17, New York

Tax Liability for the Taxable Years Ended December 81, 1944, 1945, 1947, Taxable Year January 1, 1948 to February 89, 1948, and Taxable Years Ended February 88, 1949 and 1950

*669 Page 2 of the statement in the statutory notice provided, in part, as follows:
Mr. Chakles Frost, Transferee
420 Lexington Avenue New Y ork 17, New Y ork
Transferee liability (See exhibit “B” attached)_ $995,237. 82
Value of assets held to have been distributed in 1949_$3,317,459.43
Your percentage of capital stock ownership in National Pneumatic Company at time of distribution of assets_ 30 percent
Transferee liability 30 percent of $3,317,459.43— $995,237. 82
The above stated amount, plus interest as provided by law, represents your liability as a transferee of assets of National Pneumatic Company, 420 Lexington Avenue, New York 17, New York, for deficiencies in income tax, declared value excess-profits tax, and excess profits tax, and for the unpaid balance of income, declared value excess-profits and excess profits taxes due from National Pneumatic Company for the taxable years January 1, 1944 to February 28,1950, inclusive.
The records of this office indicate that the National Pneumatic Company, 420 Lexington Avenue, New York, has been dissolved and that assets were transferred to you during the year 1949.
Inasmuch as the value of assets received by you amounted to $995,237.82, your liability is limited to that amount.
Exhibit B attached to the statutory notice contained a statement showing transferee liabilities based on distribution of assets and computed the book value of assets distributed over liabilities assumed to be $3,317,459.43, as follows:
Per return (Exhibit 4)- $2,542,291.60
Add:
Band and buildings- 1, 058, 671.23
Machinery and equipment- 89, 318. 29
Furniture and fixtures- 5, 319. 34
Automobile_ 564. 76
Leasehold improvements- ■ 3, 651. 06
Inventory - 177,146. 08
Accounts receivable_ 4,423. 36
Total _ $3, 881,385. 72
Less:
Net additional Federal Taxes proposed_ 260, 822.44
Net as determined by Revenue Agent_ $3, 620, 563. 28
Total assets as above- $3, 881, 385. 72
*670 Total deficiencies, see col. 5, page 1 of statement_ $752,174.95
Unpaid assessed taxes, Exb. A__ 596,410.26 $1, S48, 585. 21
Eederal taxes deducted in determining distributions in liquidation to stockholders of $2,542,-291.60, Exhibit 4 of return_ 784, 658. 92 563,926.29
Excess of book value of assets distributed over liabilities assumed revised_ $3, 317, 459.43
Exhibit B held that the $3,317,459.43 had been distributed as follows:

4. Taxpayer and its transferees did not agree to the assessments proposed in the statutory notices referred to in the preceding finding. However, while the conflict of opinion between this court’s decision in Olympic Radio and Television, Inc. v. United States, 124 Ct. Cl. 33, 108 F. Supp. 109 (1952), rev'd 349 U.S. 232, (1955) and the Second Circuit Court of Appeals decision in Lewyt Corp. v. Commissioner, 215 F. 2d 518 (1954), aff'd in part and rev’d in part, 349 U.S. 237 (1955), remained unresolved, settlement could not be effected despite conference between the parties.
5. On August 23, 1954, taxpayer and all the transferees filed petitions in the Tax Court of the United States for the years covered by the statutory notices. The Tax Court lacked jurisdiction to determine the matters at issue in 1945 because an overassessment was proposed for that year.
*671 6. On May 28,1955, the United States Supreme Court resolved the conflict by upholding the Second Circuit Court of Appeals in the Lewyt case and reversing this court in the Olympia Radio case. On August 4, 1955, counsel for taxpayer 'and the transferees moved the Tax Court to 'amend all the petitions filed by them to conform to the decisions of the Supreme Court which motions were granted by the Tax Court.
Upon resolution by the Supreme Court of the conflict of opinions aforementioned, conferences on the administrative level were renewed and agreements settling the issues were reached. Thereupon, in the Tax Court proceedings, stipulations embodying these agreements and determining the tax liabilities of each of the transferees of the taxpayer were executed on or about August 21, 1957, ‘by counsel for each of the transferees and by or on behalf of the Chief Counsel, Internal Revenue 'Service for the Commissioner of Internal Revenue. The stipulations specifically provided that these liabilities were for the amounts determined “plus statutory interest thereon.” The Charles Frost Stipulation is typical of all the stipulations (except as to amounts), and reads as follows:
It is hereby stipulated that there is a liability due from the. petitioner as transferee of assets of National Pneumatic Company, New York, New York, for income taxes, declared value excess profits tax and excess profits tax due from that corporation for the years and in the amounts, plus statutory interest thereon, set forth in the following statement:
INCOME Tax

Year ended Amount

December 31, 1944_$150, 302.35
December 31, 1945- 94,909. 57
December 31, 1947- 33, 759. 09
Period January 1,1948 to February 29,1948_ None
Fiscal year ended February 28, 1949- 2, 074.37
Fiscal year ended February 28, 1950_ None
DECLARED VALUE EXCESS PROFITS TAX
December 31, 1944_ 33, 873.90
EXCESS PROFITS TAX
December 31, 1944_ 239,199.30
December 31, 1945_ 236, 564.54
*672 Effective upon entry of decision pursuant to this stipulation petitioner waives the restrictions, if any, contained in the Internal Revenue Code, on the assessment and collection of the liability plus statutory interest.
The Tax Court, in conformity with the aforesaid stipulations submitted to it, entered its orders determining the tax liabilities due from each of the transferees “plus statutory interest thereon.” These orders were severally dated September 27,1957, October 8,1957, and October 9,1957.
7. The decision of the Tax Court in the case of each of the transferees was identical except as to the amount for which each of the transferees was liable. The decision determining the liability of Charles Frost, one of the plaintiffs herein, was entered October 8,1957, and reads as follows:
Pursuant to written stipulation signed by counsel for the parties in the above-entitled case and filed with.the Court on September 20, 1957 at Washington, D.C., it is
Okdeked and Decided : That there is a liability due from the petitioner as transferee of assets of National Pneumatic Company, New York, New York, for income taxes, declared value excess profits tax and excess profits tax due from that corporation for the years and in the amounts, plus statutory interest thereon as follows:
The decision then goes on to reproduce the tabular material contained in the aforesaid stipulation, as set forth in finding 6, supra. Thereafter, on October 25, 1957, the Tax Court entered an order 'amending its decision so as to correct a typographical error in the figure representing liability for excess profits tax for the taxable year ended December 81,1945.
8. On or about January 15, 1958, notices and demands for payment issued out of the office of the aforesaid District Director addressed to the taxpayer and to each of the transferees. Upon representations on behalf of the transferees, the District Director on or about July 1, 1958, submitted a revised schedule of the taxes due and interest thereon to June 80, 1958, and demanded payment in accordance therewith. The schedule included, for the two years here in *673 volved, delinquency interest of $326,818.29 as well as assessed interest on liabilities some of which had been eliminated by the aforesaid stipulations and the orders of the Tax Court entered pursuant thereto. Conferences at the administrative level at which objections were made to the interest computations resulted in the elimination of $51,569.52 of delinquency interest, thus leaving a total of delinquency interest for the years 1941 and 1945 of $275,248.77. See finding 17, infra,.
9. At the time of the dissolution of the taxpayer, there were unpaid assessments against it on the rolls of the then Collector of Internal Eevenue, Third District of New York, later Director of Internal Eevenue, Manhattan District of New York, for income taxes, declared value excess profits taxes, and excess profits taxes for the years here involved. Claims filed by the taxpayer were pending for the adjustment and refund of the taxes for the two years here involved.
The taxes assessed and on the rolls of the District Director of Internal Eevenue on the date of dissolution of National Pneumatic Company amounted to $5,240,778.92. The net additional taxes asserted against the transferees in the statutory notice of May 26, 1954, amounted to $260,822.44. On the date of taxpayer’s dissolution the total repayable to the Department of the Army in renegotiation proceedings as determined prior to the dissolution amounted, with interest, to $1,491,927.27. The aggregate of the aforesaid liabilities amounts to $6,993,528.63.
10. Of the amount of $5,240,778.92 mentioned in the preceding finding, $3,684,343.25 was abated on August 10,1951; $458,240.66 was abated by the decision of the Tax Court on October 8, 1957, in proceedings before it by the transferees; $138,136.12 was paid through credits to which the transferees were entitled and by payments made by them of $960,058.89. Of the latter amount, $76,089.64 was refunded on May 12, 1961. The following chart sets forth in detail the assessments on the rolls of the District Director, the dates when finally determined, and the ultimate abatements or payments made with respect thereto:

*674

*675 11. Payment of the balances of principal and interest, as computed by the District Director, thereafter was insisted upon by him. Final payment, as demanded, was made by Charles Frost, as agent for the transferees, on or about December 1,1958.
12. On or about April 29,1959, plaintiffs filed in the office of the aforementioned District Director, a claim for refund of the interest paid for the taxable year 1944 in the amount of $414,032.60. On or about May 12,1961, the taxpayer was advised by a tax adjustment voucher issued out of the office of the said District Director, that of the aforesaid amount claimed there was allowed $76,089.64 of assessed interest together with statutory interest thereon. In a letter dated May 15, 1961, the said District Director informed the taxpayer that, to the extent not allowed, the claim was disallowed. The amount thus disallowed is $337,942.96.
On or about April 29, 1959, plaintiffs filed in the office of the aforementioned District Director, a claim for refund of the .interest paid for the taxable year 1945 in the amount of $393,557.50. By letter dated June 14, 1960, the District Director gave notice of disallowance in full of the said claim. The aggregate of the two disallowed claims thus amounted to $731,500.46.
13. On or about October 10, 1949, Charles Frost, as agent for the transferees of National Pneumatic Company, entered into a contract with John Hancock Mutual Insurance Company to sell the Bahway plant which was distributed to him as such agent upon the dissolution of National Pneumatic Company. The sale was closed on or about December 1, 1949. The proceeds amounting to $1,400,000.00 were used to pay, on or about December 16, 1949, renegotiation liabilities of National Pneumatic Company for 1945 amounting to $718,963.53 consisting of excessive profits of $699,530 and interest of $19,433.53, and on or about January 3,1950, a similar liability for 1943 of $576,605.22. Interest amounting to $196,358.52 on the aggregate of the two amounts of $699,530 and $576,605.22, namely, $1,276,135.22, was paid by Charles Frost, as agent, in installments, the last payment being made on June 30, 1955. The aggregate of these payments amounted to $1,491,927.27 and discharged the renegó- *676 tiation liabilities in tbat amount together with interest thereon.
14. On demand of the District Director of Internal Revenue, Manhattan District, Charles Frost, as agent for all the transferees, delivered to the said District Director 80,000 shares of stock of Redmond Company, Inc. being all its outstanding stock, subject to a custody agreement. Among the terms of the said agreement were the following: (a) restrictions on the payment of dividends, (b) an understanding that at all times the District Director had the right to take any and all steps necessary or proper to accomplish the collection in full of all liabilities outstanding on his records and to proceed in any manner he considered necessary for its accomplishment.
15. Haskins & Sells, auditors of the taxpayer, prepared its final income tax return for the fiscal year ended February 28, 1950. As part of the taxpayer’s said final income tax return, there was attached, as Schedule L, the following balance sheet setting forth the assets and liabilities of the National Pneumatic Company, as of February 28,1949:
A cSQTSimci
Cash___ $67,959.69
Accounts receivable_$1,162,915. 68
Less reserve for doubtful accounts_ 21,361. 32
Net__$1,141,554.36
Inventory_$1,066,199. 00
Investments:
Corporate stocks_ $56,253. 00
Subsidiaries_ 2,200,445.62
Total__$2,256,698.62
Capital assets:
Buildmgs_$1,141,084. 80
Machinery and equipment_ 1,144,133. 52
Furniture and fixtures_ 66,465. 64
Automobiles_ 11,089.64
Total_$2,362,773.60
Less reserve for depreciation_ 356,310. 19
Net_$2,006,463.41
Land...____ 170,500.00
Total___$2,176,963.41
*677 Other assets:
Deposits_ $12,858.06
Prepaid insurance, etc_ 26,157. 02
Total_ $39,015.07
TOTAL_$6,748,390. 15
LIABILITIES
Accounts payable_ $151,673. 84
Notes and loans payable:
Maturity of less than one year_ $425,011. 39
Maturity of more than one year_ 6,677. 37
Total_ $431,688.76
Accrued expenses:
Interest payable_ $657,137. 91
Compensation insurance _ 8,997.40
Royalties payable_ 400. 00
Vacation pay and other accrued expenses_ 47,680. 23
Total_ $714,215. 54
Other liabilities:
Reserve for Federal income taxes_$1,684,155. 91
Reserve for other taxes_ 11,045.49
Reserve for renegotiation_ 570,299. 48
Total_$2,265,500.88
Capital stock_$2,024,000. 00
Capital surplus_ $314,764 09
Earned surplus_ $846,547. 04
TOTAL_$6,748,390. 15
Also included in tlie final income tax return, as Exhibit IV, was the following schedule prepared as of February 28, 1950, and entitled “Distributions in Liquidation to Stockholders” :
Distributions in liquidation: Valves as pet books
#1 and #2 — Land, buildings and appurte-nances_ $1, 221, 383. 40
#3 — 3,750 shares of Standard Factors Corporation preferred stock_ 56, 250. 00
#4 — 80,000 shares of Redmond Company, Inc. stock_ 2, 075, 511. 64
#5 — 1,217,000 shares of National Pneumatic Co., Inc. stock (A)_ 1, 217, 000. 74
#6 — Cash ($606.24) and other assets_ 4, 222. 22
Claim for redetermination of excessive profits for the year 1942 under the Renegotiation Act_ 674, 866. 00
Total_ 5, 249, 234. 00
*678 Liabilities assumed by stockholders:
Federal income taxes_ $784, 658. 92
Federal income taxes due on excessive profits to be refunded (see claim above); amount indeterminable at the present time_ _
Renegotiation of excessive profits- 1, 234, 829. 48
Accrued interest on taxes and renegotiation- 592, 078. 26
Voucher payable_ 34, 337. 69
Accrued legal fee_ 10, 000. 00
Advances_ 51, 038. 05
Total_ $2, 706, 942. 40
Excess of book value of assets distributed over liabilities assumed — Schedule M- 2, 542, 291. 60
(A) Formerly Holtz,er-Cabot, Inc. National) Pneumatic Company discontinued operations on October 14,1949 and completed distributions of all remaining assets on December 28, 1949.
The tax liability of the taxpayer to the Treasury Department as the result of its claim for redetermination of 1942 excessive profits of $674,866, carried in the aforesaid Exhibit IY as an asset, was not known at the time of the preparation of the balance sheet and the statement of taxpayer’s liquidation account. Consequently, taxpayer’s auditors, Haskins & Sells, made no adjustment in their aforesaid schedule of distributions for any tax liability of taxpayer on its claim for refund of excessive profits in the sum of $674,866. The tax determined by and paid to the Internal Revenue Service amounted to $539,892.80. The balance of the excessive profits refund, namely, $134,973.20, plus interest of $34,166.46, a total of $169,139.66, satisfied an outstanding assessment of excess profits tax for the year 1941.
16. The liquidation account prepared by Haskins & Sells, as set forth in the preceding finding, discloses that 80,000 shares of stock of Redmond Company, Inc. were valued at $2,075,511.64. The actual value at date of dissolution of the taxpayer, as stipulated by the parties, was $1,100,000, a difference of $975,511.64. If the aforesaid liquidation account is adjusted by reducing the value of the Redmond stock in the amount of $975,511.64 and further by eliminating therefrom the claim for redetermination of 1942 excessive profits in the amount of $674,866, the value of distributions to the transferees totaled $3,598,856.36. The liabilities ac *679 count, as set forth in the preceding finding shows $784,658.92 set aside for income taxes. The actual amount paid, however, was $883,969.25. (See finding 10 which reveals a $960,058.89 total paid by cash and a later $76,089.64 refund made by defendant.) Adjusting the liabilities column in the schedule in finding 15 to reflect the $883,969.25 figure, total liabilities are shown to :be $2,806,252.73. The computed figure for excess of asset values distributed over liabilities assumed is therefore reduced from $2,542,291.60 to $792,603.63.
17. The interest paid on December 1, 1958 (see finding 11, supra), by the plaintiffs with respect to the tax liabilities of the National Pneumatic Company for the years 1944 and 1945, which remains at issue in this case and the refund of which is claimed by the plaintiffs, is as follows:

The assessed interest for 1944 of $167,949.79 tabulated above was computed by the Internal Revenue Service as follows:

Declared Value Excess Profits Tax

(Identified above as DVEP acct. #12-6-57, Spl. #N — 2,000)
On $7,007.01 (attributable to General Adjustments) from 3-15-45 (due date of return) to 10-27-57 (30 days from date of Tax Court decision, Docket No. 54376) factor .756972___ = $5,304.11
*680 On $7,914.14 (attributable to carry-back from 1946) from 9-26-47 (date of CB Scb. No. 6269) to 10-27-57 (30 days from date of Tax Court Decision (Docket No. 54376) factor .605164___= $4,789.35
Total_ $10, 093. 46

Excess Profits Tax

(Identified above EP acct. #12657, Spl. #N — 2,020)
On $48,075.32 (attributable to General Adjustments) from 3-15-45 (due date of return) to 3-15-47 (due date of carryback year) factor .12_= 5, 769. 04
On $251,315.66 (attributable to Excessive allowance of NOL CB from 1946) from 9-26-47 (date of Sch.. No. IT: CB-6269) to 10-27-57 (30 days from date of Tax Court Decision, Docket No. 54376) factor .60516438_ = 152,089.29
Total_ 157, 856. 33
Total assessed interest_ 167, 949. 74
The delinquency interest for 1944 of $169,993.17 tabulated above was computed by the Internal Revenue Service as follows:

Income tax

(1) (IT Acct. #41080443/45) on $74,548.00 from 6-5-45 (date of Notice and Demand) to 6-30-58 (date of Payment) factor .7841095. _ = $58, 453. 80
(2) (IT Acct. #923 47, Spl. #15,000) on $104,707.10 from 9-30-47 (date of Notice and Demand) to 6-30-58 (date of payment) factor .645_ = 67, 536. 08
Total. $125, 989. 88

*681
Declared Value Excess Profits Tax

(1) (DVEP Acct. #5-415001/46) on $34,133.22 from 7-10-46 (date of Notice and Demand) to 6-27-55 (date of payment) factor .5377945— = $18, 356. 66
(2) (DVEP Acct. #12-6-57, Spl #N 2,000) on $25,014.61 from 1-5-58 (date of Notice and Demand) to 6-30-58 (date of payment) factor .0274657_ = 687.04
Total__ $19, 043. 90

Excess Profits Tax

(EP Acct. #5-402200/46) (1) on $3,042.34 from 7-10-46 (date of Notice and Demand) to 6-27-55 (date of payment) factor .537794_= 1, 636. 15
(2) On $10,000 from 7-10-46 (date of Notice and Demand) to 12-28-55 (date of payment) factor .5679589— = 5, 679. 59
(3) On $10,000 from 7-10-46 (date of Notice and Demand) to 2-1-56 (date of payment) factor .5736164_ = 5, 736. 16
(4) On $1,156.36 from 7-10-46 (date of Notice and Demand) to 3-5-56 (date of payment) factor .578945_= 669. 47
Total_ 13, 721. 37
(EP Acct. #12-6-57, Spl #N-2, 020) on $409, 171.99 from 1-15-58 (date of Notice and Demand) to 6-30-58 (date of payment) factor .02746575_ = 11,238.22
24, 959. 59
Total delinquency interest_ 169, 993.17
Total of assessed and delinquency interest in issue in 1944_ 337, 942. 96
*682 The assessed interest for 1945 tabulated above was computed by the Internal Revenue Service as follows:
Declared Value Excess Profits Tax (DVEP Acct. #12-6-57, Spl. #N 2,040) On $3,025.05 (general adjustment deficiency extinguished by 3806(b) adjustment) from 3-15-46 (due date of return) to 12-16-49 (date of repayment to Government agency) factor . 225164___ $681.13

Excess Profits Tax

(EP Acct. #12-6-57, Spl. #N-2,060) (1) On $99,427.61 from 3-15-46 (due date of return) to 12-16-49 (date of payment to Government Agency) factor . 2251643_ 22, 387. 35
(2) On $445, 693. 13 from 3-15-46 (due date of return) to 12-16-49 (date of payment to Government Agency) factor . 22516438_ 100, 354. 22
(3) On $236, 564. 54 from 3-15-46 (due date of return) to 10-27-57 (30 days from date of Tax Court Decision, Docket No. 54376) factor . 69697260___ [1] 164, 879. 00
Total_ 287, 620. 77
Total assessed interest_ $288, 301. 90
-164,879. 00
Total nondelinquency interest assessed_ 123, 422. 90
The delinquency interest for 1945 tabulated above was computed by the Internal Revenue Service as follows:

Income Tax

(IT Acct. #4109383/46) on $22,789.89 from 7-15-46 (determining date of interest on assessment) to 3-3-58 (date of payment) factor .6976301_— $15,898.92
On $24,039.89 from 6-15-46 (due date Hof 2nd installment) to 3-3-58 (date ff of payment) factor .7026301_= 16, 891. 15
*683 On $48,535.69 from 8-30-46 (date of Notice and Demand) to 3-3-58 (date of payment) factor .6901643_= $33, 497. 52
Total_ $66, 287. 59

Declared Value Excess Profits Tax

(DVEP Acct. #12-6-57, Spl. #N 2,040) On $681.13 from 1-15-58 (date of Notice and Demand) to 6-30-58 (date of payment) factor .02746_= 18. 70

Excess Profits Tax

(EP Acct. #4002737/46) On $8,843.64 from 3-15-46 (due date of first installment) to 3-5-56 (date of payment) factor .598123_= 5, 289. 58
On $10,000.00 from 3-15-46 (due date of first installment) to 4-2-56 (date of payment) factor .6029589_= 6, 029. 59
On $10,000.00 from 3-15-46 (due date of first installment) to 5-1-56 (date of payment) factor .6076301_ = 6, 076. 30
On $10,000.00 from 3-15-46 (due date of first installment) to 5-31-56 (date of payment) factor .6126301_= 6,126. 30
On $10,000.00 from 3-15-46 (due date of first installment) to 6-29-56 (date of payment) factor .6173013_ = 6,173. 01
On $10,000 from 3-15-46 (due date of first installment) to 7-31-56 (date of payment) factor .6226301_= 6,226.30
On $12,195.91 from 3-15-46 (due date of first installment) to 9-30-57 (date of payment) factor .6924657_= 8,445. 25
On $37,804.09 from 6-5-46 (date of Notice and Demand) to 9-30-57 (date of payment) factor .6791095_ = 25, 673.12
On $50,000.00 from 6-5-46 (date of Notice and Demand) to 12-3-57 (date of payment) factor .6896027_= 34,480.14
On $4,571.89 from 6-5-46 (date of Notice and Demand) to 1-13-58 (date of payment) factor .696315_= 3,183.48
On $131,992.65 from 6-5-46 (date of Notice and Demand) to 6-30-58 (date of payment) factor .72410958_= 95, 577.14
Total_ 203, 280. 21
*684 Less Amount assessed Acct. #12-6-57, Spl. #N-2060_ $164, 879.00
38, 401. 21
(EP Acet. #12-6-57 Spl. #N-2060) On $22,387.55 from 1-15-58 (date of Notice and Demand) to 6-30-58 (date of payment) factor .0274657_= $614. 89
Total Delinquency interest_ 270, 201. 39
Total of assessed and delinquency interest in issue in 1945_ [2] 393, 624. 29
18. Plaintiffs have made no transfer or assignment of said claims or any part thereof. No action other than as aforesaid has been taken thereon by Congress, by any department of the Government of the United States, in the Tax Court of the United States, or in any other judicial proceeding.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover, and the petition is dismissed.

 Plaintiffs Rave not persuaded us that the interest collected included interest with respect to liabilities eliminated in the Tax Court.

 § 311. Transferred assets — (a) Method of collection. The amounts of the following liabilities shall * * * be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in ease of delinquency in payment after notice and demand, * * *) :
(1) Transferees.
The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter.

 See Ledyard v. Bull, 119 N.Y. 62, 74.

 This amount is actually delinquency interest which was assessed.

 The amount claimed in the petition, however, is $393,557 .60.